JOSEPH H. AINLEY, ESQ., SB # 141230
JOSEPH AINLEY & ASSOCIATES, A P.C.
1494 Hamilton Way, Suite 100
San Jose, CA 95125
(408) 465-4518
(408) 834-7630 Facsimile
Email: joe@ainleylaw.com

Attorneys for Defendant
MICHAEL KAIL

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL KAIL,<br><br>Defendant. | No. 18-cr-00172-BLF-1<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION TO DISMISS [F.R.C.P. 12(b)(3)]**<br><br>Date: December 11, 2018<br>Time: 9:00 a.m.<br>Dept.: 3<br>Judge: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS .......................................................................................1

    A. The Allegations of the Indictment. ...............................................................1

    B. Netflix's Interrogatory Responses in Its Civil Action against Kail. .........................2

    C. The FBI Search Warrant Affidavits. ..............................................................3

III. LEGAL ANALYSIS ................................................................................................3

    A. The Applicable Legal Standard .....................................................................3

    B. The Purported Victim in This Matter Has Suffered No Money or Property Loss and Therefore the Indictment Should be Dismissed. ..................................5

        1. Milovanovic Clearly Contemplates Refining the Bright Line Test in *Skilling*. .................................................................................................6

        2. The Doctrine of Honest Services Fraud Applies Generally to Governmental Not Private Actors. ............................................................6

        3. The Scope of Duties in the Public Sector Greatly Exceed Those in the Private Sector. ...............................................................................7

IV. CONCLUSION ........................................................................................................8

# TABLE OF AUTHORITIES

**Federal Cases**

*Bejaoui v. City of New York*, WL1529633 at *11 (EDNY 2015)..................................................4

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991)...........................................4

*Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994)..........................................................4

*Int'l Star Class Yacht Racing Assn'n v. Tommy Hilfiger U.S.A., Inc.*,
    146 F.3d 66 (2d Cir. 1998) ......................................................................................................4

*U.S. v. Czubinski,* 106 F.3d 1069 (1st Cir. 1997)........................................................................7

*U.S. v. Kincaid-Chauncey*, 556 F.3d 923 (9th Cir. 2009)............................................................7

*U.S. v. Silvano*, 812 F.2d 754 (1st Cir. 1987)..............................................................................7

*United States v. Apple*, 927 F. Supp. 1119 (N.D.Ind. 1996) .......................................................4

*United States v. Bohonus*, 628 F.2d 1167 (9th Cir. 1980)...........................................................7

*United States v. Daychild*, 357 F3d 1082 (9th Cir. 2004) ..........................................................3

*United States v. Langford*, 647 F.3d 1309 (11th Cir. 2011).......................................................7

*United States v. Milovanovic*, 678 F.3d 713 (9th Cir. *en banc*) ..........................................1, 5, 6

*United States v. Pitt-Des Moines, Inc.*, 970 F. Supp. 1346 (N.D. Ill. 1997) ................................4

*United States v*. *Procter & Gamble Co.*, 47 F. Supp. 676 (D. Mass. 1942)..................................7

*United States v. Ruiz-Castro*, 125 F. Supp. 2d 411 (D. Haw. 2000) ...........................................3

*United States v. Shortt Accountancy Corp.*, 785 F.2d 1448 (9th Cir. 1986) ................................3

*United States v. Skilling*, 200 U.S. 321 (2010)............................................................................6

*United States v. Vinyard,* 266 F.3d 320 (4th Cir. 2001) ..............................................................5

*Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560 (E.D.N.Y. 2011) .................4

*Winslow v. United States*, 216 F.2d 912 (9th Cir. 1955) .............................................................3


**Federal Statutes**

18 U.S.C. § 1346 ...............................................................................................................1, 5, 6

42 U.S.C. § 1341 ........................................................................................................................6

42 U.S.C. § 1343 ........................................................................................................................6

**Rules**

Federal Rule of Evidence 201(b) ................................................................................................. 3

Federal Rules of Civil Procedure Rule 12(b)(6) ........................................................................... 4

Federal Rules of Criminal Procedure Rule 12(b) ......................................................................... 3

Federal Rules of Criminal Procedure Rule 12(b)(3) ................................................................. 3, 4

Federal Rules of Criminal Procedure Rule 12(d) ......................................................................... 3

Federal Rules of Criminal Procedure Rule 12(e) ......................................................................... 3

Federal Rules of Evidence Rule 201 ............................................................................................ 4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION TO DISMISS [F.R.C.P. 12(b)(3)]

## I. INTRODUCTION

Defendant Michael Kail (hereinafter "Kail" or "Defendant") brings this motion to dismiss because the indictment, when read with documents integral to it, clearly reveals that the "money" and "property" allegedly fraudulently acquired by Kail comes from third parties, not the alleged 'victim' Netflix. As discussed below, the Ninth Circuit in *United States v. Milovanovic*, 678 F.3d 713 (9th Cir. *en banc*) deliberately left open the question whether an honest services fraud prosecution will lie as against a private actor where there has been no economic harm to the victim of the fraud. Kail submits this case squarely puts at issue the question of whether a private actor may be guilty of a crime where there is no harm and submits that the correct answer to that question is that there should not be a crime. This result would be in line with public policy. Case law has for decades focused largely on honest services fraud by public officials who have caused injury by breaching their trust to the public rather than on private actors. Moreover, courts have expressed grave concerns over the reach of 18 U.S.C. § 1346. At some point, any conduct becomes a potential crime, depending on the whim of the prosecutor. Kail submits that imposing a definite requirement of economic harm to a victim of honest services fraud in the private context limits the potential over-reach of a statute that seemingly has no limit to its use.

## II. STATEMENT OF FACTS

### A. The Allegations of the Indictment.

The indictment in this case alleges that defendant Michael Kail engaged in a "scheme and artifice to defraud … to obtain money and property by means of materially false and fraudulent pretenses … omissions, and to deprive Netflix of its intangible right to Kail's promised services." (Indictment at (¶ 17) With respect to "money and property," the indictment alleges that "the gist of the scheme was that Kail used his position as Vice President of Internet Technology at Netflix to approve contracts with and payments to vendors, including Netenrich and VistaraIT, Inc. "(¶ 17) In return for these contracts and payments, VistaraIT and others paid Kail kickbacks, including payments determined as a percentage of the business they did with

Netflix.  Certain vendors to Netflix also awarded Kail shares of stock and stock options in exchange for Kail's approving contracts for Netflix." (*Id*.)  The indictment goes on to allege that the "scheme deprived Netflix of its 'money and property' by enabling vendors to, among other things, negotiate more favorable contracts with Netflix than they would have been able to obtain without the assistance of Kail, and (b) its intangible right to Kail's honest services." (¶ 21)  The indictment proceeds to recite payments to Kail by third parties.  The indictment does not allege that Kail caused any "money or property" damage or loss to Netflix other than allowing third parties to negotiate "more favorable contracts with Netflix" than they otherwise would have obtained (Id. at ¶ 21)  The allegation makes no further claim that Kail caused money or property loss to Netflix.  At paragraph 38, the indictment asserts that "the victim suffered losses of at least approximately $716,000." (Id.)  By the plain language of the indictment, the gain to Kail must have been loss to "the victim [Netflix]" in an amount equal to the amount Netflix paid over and above the prevailing rate for contracts involving Kail.  The indictment contains no allegation that Kail fraudulently received Netflix money or property by any other means.

**B.    Netflix's Interrogatory Responses in Its Civil Action against Kail.**

Prior to the government's filing of the indictment, Netflix filed a civil suit against Kail alleging various flavors of wrongdoing which settled on or about November 24, 2015.  The government began its investigation into Kail on December 1, 2014 "in conjunction" with Netflix. During the course of litigation with Netflix, Kail propounded interrogatories and Netflix's responses to Interrogatory Nos. 7 and 8 state unequivocally that Netflix does not contend, and did not contend, that it paid more than it would have to a third-party vendor because of any action by Kail.[1]  This directly repudiates the only charge in the indictment which suggests Kail harmed Netflix. According to the indictment every dollar that Kail received as a 'kickback' came from a third party, not from Netflix (the "victim") because he enabled third parties to "negotiate more favorable contracts with Netflix than they would have been able to obtain without the

---

[1] The interrogatories and their responses thereto are currently the subject of an *ex parte* application to file under seal in light of a protective order entered into between Kail and Netflix in the underlying civil action (Dkt. 22).

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION TO DISMISS [F.R.C.P. 12(b)(3)]

assistance of Kail." (Indictment at ¶ 21.)

C. **The FBI Search Warrant Affidavits.**

Integral to the government's indictments are the affidavits of Agent Frank Reid drafted in support of search warrants for defendant's home and Google email accounts. Those affidavits, running to hundreds of pages detail interviews with Netflix employees, with Reed Hastings, the CEO, and review of the "Culture Deck" at Netflix (See Request for Judicial Notice at Exh. "A") Nowhere in the hundreds of pages prepared by agent Reid is there an assertion or opinion that Kail obtained money or property from Netflix. This investigation, which is clearly integral to the government's indictment (which is in essence an adumbrated version of the affidavits), merely recites that Kail may have served on the consumer advisory boards of other companies and accepted commissions from two entities for a business referral to Netflix. There is no contention, as alleged in the indictment, that the third parties referred to Netflix obtained better terms when dealing with Netflix than they would have without Kail's involvement.

### III. LEGAL ANALYSIS

A. **The Applicable Legal Standard**

Under Rule 12(b)(3) of the Federal Rules of Criminal Procedure, a party may file a motion to dismiss based on "any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b); *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). Generally, when considering a motion to dismiss, the court is limited to the face of the indictment and must accept the facts alleged in that indictment as true. *Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1955); *United States v. Ruiz-Castro*, 125 F. Supp. 2d 411, 413 (D. Haw. 2000). A court must decide such a motion before trial "unless it finds good cause to defer a ruling." Fed. R. Crim. P. 12(d); *Shortt Accountancy*, 785 F.2d at 1452 (citing former Fed. R. Crim. P. 12(e)).

However, the Court may consider extrinsic evidence by judicial notice under Federal Rule of Evidence 201(b). *E.g., United States v. Daychild*, 357 F3d 1082,1099 (9th Cir. 2004) (taking judicial notice of indictment "properly returned"); *Int'l Star Class Yacht Racing Assn'n v.*

*Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.")  See *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)) ("the court may take judicial notice of matters of public record").  As a number of courts have pointed out, a "motion to dismiss an indictment is [ ] similar to a civil Rule 12(b)(6) motion which tests the sufficiency of the underlying complaint: "A motion to dismiss an indictment is [….] similar to a civil Rule 12(b)(6) motion, which tests the sufficiency of the underlying complaint (here the indictment)." *United States v. Pitt-Des Moines, Inc.*, 970 F. Supp. 1346, 1348 (N.D. Ill. 1997); *United States v. Apple*, 927 F. Supp. 1119, 1121 (N.D.Ind. 1996); see also, *Bejaoui v. City of New York*, WL1529633 at *11 (EDNY 2015) (Extrinsic materials may also be considered—without converting the motion into one for summary judgment—if they constitute "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." Id.)

In addition to judicial notice of documents, it is also true that when considering a 12(b)(3) or 12 (b)(6) motion, the court is entitled to consider categories of documents including:

> "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) **_documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference_**, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed [ ] ….. and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence."

*Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011); see also *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim.").

In this matter Defendant requests that this Court take judicial notice of the search warrant affidavits previously filed under seal and un-sealed at the last hearing in this case (The affidavits

are attached as exhibits A and B to the request for judicial notice.) and Netflix interrogatory responses previously submitted under seal (Dkt.22).

**B. The Purported Victim in This Matter Has Suffered No Money or Property Loss and Therefore the Indictment Should be Dismissed.**

When the affidavits and interrogatory responses are considered in conjunction with the indictment it is plain that Netflix suffered no economic harm by any action taken by Kail. The $716,000 of alleged approximate damage to Netflix (Indictment at ¶ 38) is money from third parties allegedly given to Kail as kickbacks. This is not an injury or loss to Netflix. It may be a deprivation of honest services under § 1346 but that is all. In the absence of money or property loss the Indictment should be dismissed.

The leading Ninth Circuit case interpreting and applying honest services fraud under 18 USC § 1346 is *Milovanovic*, *supra,* 678 F.3d 713 (9th Cir. *en banc*). In that case, the State of Washington contracted Defendant to administer driving tests for issuance of commercial driving licenses. In the course of his official duties, Milovanovic solicited and accepted payments of $2,500 per license from potential drivers, in exchange for which he enabled the applicant to cheat on and thereby pass the driving tests. The District Court dismissed the "honest services" indictment on grounds that among other things, there was no allegation of economic harm to the State. The Ninth Circuit reversed, rejecting the "foreseeable economic harm" doctrine adopted by the 1st, 4th, 6th, 8th, 11th and D.C. Circuits (*see, e.g. United States v. Vinyard,* 266 F.3d 320, 327-29 (4th Cir. 2001) and joining the 2nd, 5th, 8th, and 10th Circuits in applying a "materiality" test by which " the misrepresentation or omission at issue for an honest services fraud conviction must be 'material' such that the misinformation or omission would naturally tend to lead or is capable of leading a reasonable employer to change its conduct." *Milovanovic*, *supra,* at 727. However, the court expressly limited its holding to the "honest services" fraud by fiduciaries of a *public* entity. Stepping back from its holding, the court, unnecessarily for its decision, stated:

> We do not need to decide whether in a *private sector* case there might be a requirement that economic damages be shown. Because this case involves honest services fraud committed against the *public* for which no economic damages need be shown, we leave that question to another day. *Id*. 727(*emphasis added*)

Defendant submits that the proverbial "another day" is upon us: since *Milovanovic*, no Ninth Circuit decision has addressed the issue of whether economic damage is an element of honest services fraud under § 1346[2]. There are many reasons why there should be a requirement of actual economic harm to the victim of an honest services fraud: that is, this court should require the government to allege and to prove loss of *money or property* as required under the wire and mail fraud statutes (42 U.S.C. §§1341, 1343).

1. **Milovanovic Clearly Contemplates Refining the Bright Line Test in *Skilling*.**

The Supreme Court's decision in *United States v. Skilling*, 200 U.S. 321 (2010) makes no distinction between public and private actors. The Court seemingly applied a bright line test for culpability under § 1346; on the one hand conflict of interest, or self-dealing would not sustain a conviction in the absence of bribes or kickbacks. In dissent, Justice Scalia criticized this bright line test as arbitrary. Noting that the prior to enactment of § 1346 cases included or excluded from the reach of the statute a wide variety of conduct. Three years post *Skilling*, the Ninth Circuit clearly has a distinction in mind when distinguishing private conduct from public misfeasance in the context of a case that has no private component whatsoever. If the Ninth Circuit did not wish to distinguish public from private misconduct it would have been unlikely to invite just such a challenge when it had no need to do so in order to reach the issues at hand in *Milovanovic.* This is a strong judicial indicator that the Ninth Circuit wishes to impose a requirement of actual harm under § 1346 in the private context. Were it otherwise, there would be no reason to address the issue at all.

2. **The Doctrine of Honest Services Fraud Applies Generally to Governmental Not Private Actors.**

The courts in every circuit have applied the 'honest services' doctrine largely to public *not* private actors. While there have been prosecutions of private sector employees for honest services fraud since 1941 (*see*, *United States v. Procter & Gamble Co.*, 47 F. Supp. 676 (D.

---

[2] To this author's knowledge, 44 cases have cited to *Milovanovic* but has addressed the element of economic harm in the context of a private sector claim of fraud.

Mass. 1942) the vast majority of cases have involved public officials as opposed to private individuals. *See, e.g. U.S. v. Kincaid-Chauncey*, 556 F.3d 923, 939 (9th Cir. 2009), *citing U.S. v. Silvano*, 812 F.2d 754, 759 (1st Cir. 1987) ("Furthermore, the honest services doctrine has mainly been used to punish fraud against citizens perpetrated by government officials." *Id.)*. The reach of the 'honest services' statute is limited by a variety of factors but principal among them is violation of the public trust invested in public officials. While the term "honest services" is not defined in the statute, "the paradigm case of honest services fraud is the bribery of a public official." *United States v. Langford*, 647 F.3d 1309, 1321 (11th Cir. 2011); *see also, United States v. Bohonus*, 628 F.2d 1167, 1171 (9th Cir. 1980) (schemes which deprive others of intangible rights most often involve bribery of public officials). In cases involving bribery of public officials ("[t]he requisite 'scheme or artifice to defraud' is found in the deprivation of the public's right to honest and faithful government. When a public official is bribed, he is paid for making a decision while purporting to be exercising his independent discretion. The fraud element is therefore satisfied.") *Id*.

### 3. The Scope of Duties in the Public Sector Greatly Exceed Those in the Private Sector.

The scope of fiduciary duty is far broader in the public context than in the case of private actors and in this case the indictment lacks any allegation of breached duty; in distinction from the obvious duty of a public official, a private actor may or may not have a legal duty of to his or her employer sufficient to sustain an indictment. The honest services doctrine has mainly been used to punish fraud against citizens perpetrated by government officials. *See, e.g., U.S. v. Kincaid-Chauncey,* 556 F.3d 923, 939 (9th Cir. 2009), ("[T]he theory relies on the idea that a public official acts as trustee for the citizens and the State . . . and thus owes the normal fiduciary duties of a trustee, e.g., honesty and loyalty to them….While honest services fraud can occur in the employer-employee relationship, courts have been hesitant to impose federal liability upon every private dispute involving an employee transgression that incurs no public deprivation of rights." *Id). U.S. v. Czubinski,* 106 F.3d 1069, 1077 (1st Cir. 1997) (holding that examining confidential information for one's own purposes dues not rise to the requisite

level of a workplace violation to sustain a mail fraud charge under the honest services theory).

In any event, the indictment fails to allege any such hypothetical duty, indeed it does not allege any duty, and in the absence of economic harm, such an indictment should be dismissed as an alleged misrepresentation or omission makes for culpability only to the extent that that there is a corresponding duty to the allegedly deceived.

## IV. CONCLUSION

For all of the foregoing reasons, Defendant Kail respectfully submits that the Indictment in this matter should be dismissed.

Respectfully submitted,

Dated: November 27, 2018        JOSEPH AINLEY & ASSOCIATES, A P.C.


By _____/s/_____
    JOSEPH H. AINLEY, Attorneys for Defendant,
    MICHAEL KAIL