JULIA M. JAYNE (State Bar No. 202753)
E-Mail: *julia@jaynelawgroup.com*
JAYNE LAW GROUP, P.C.
483 9th Street, Suite 200
Oakland, California 94607
Telephone: (415) 623-3600
Facsimile: (415) 623-3605

Attorneys for Defendant
MICHAEL KAIL

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-00172 BLF |
| Plaintiff, | **DEFENDANT MICHAEL KAIL'S MEMORANDUM REGARDING FORFEITURE AND VERDICT FORM** |
| v. | Dept:     Courtroom 3 |
| MICHAEL KAIL et al, | Judge:    Hon. Beth L. Freeman |
| Defendant. | Trial Date:    March 1, 2021 |

In accordance with the Court's request for caselaw regarding forfeiture as it relates to a violation of 18 U.S.C. § 1957 (Count 24), Defendant Michael Kail ("Mr. Kail"), by undersigned counsel, submits the following memorandum in support of a special forfeiture verdict form. Further, Mr. Kail proposes to modify his previous proposed verdict form filed on January 7, 2021 (ECF 101). In short, forfeitures due to a violation of Section 1957 can *only* involve the criminally derived proceeds, and not any "clean" or "commingled" funds. In other words, only the $70,000 at issue in Count 24 can be forfeited and a jury verdict form pertaining to *any* of the residence, whole or a portion, would be error.

**I.   THE ELEMENTS OF § 1957 ARE DIFFERENT FROM § 1956 AND THE CASELAW SHOULD NOT BE CONFUSED**

Mr. Kail has been charged with a violation of Section 1957, which criminalizes engaging

**DEFENDANT'S MEMORANDUM RE FORFEITURE, CASE CR 18-0172 BLF**

in monetary transactions greater than $10,000 in property derived from specified unlawful activity. The term "criminally derived property" means any property constituting or derived from, proceeds obtained from a criminal offense. 18 U.S.C. § 1957(f)(2). Thus, the plain language of the statute is sufficient authority for the proposition that a conviction under § 1957 cannot encompass more than the forfeiture of the "dirty" money. Importantly, the statute is fundamentally different from 18 U.S.C. § 1956 and *United States v Rutgard*, 116 F.3d 1270 (9th Cir. 1997) is the leading case to examine the differences in the two money laundering statutes.

In *Rutgard,* the Ninth Circuit outlined the ways in which the prosecution could and could not prove a violation of § 1957. There, the government had charged the defendant, an ophthalmologist, with two counts of money laundering in violation of § 1957, for allegedly having transferred more than $7.5 million in criminally derived funds from his bank account. Although the government asserted that the defendant's entire medical practice was fraudulent, the Ninth Circuit court rejected that theory on the facts, noting that the proof showed only that the defendant had derived $46,000 of the $7.5 million by fraudulent means. Thus, the court determined that, at the time of the transfers, the defendant's bank account contained funds from both legal *and* illegal sources. *See Rutgard,* 116 F.3d at 1290.

The court then addressed whether there was sufficient evidence to establish that the defendant had transferred at least $20,000 of the "fruits of the fraud" ($10,000 for each count) as part of the $7.5 million transfer from his account. The court held that there was not. Because there remained *more than* $46,000 in the defendant's bank account on the date of the allegedly illegal transfers, the government had not proved beyond a reasonable doubt that the $7.5 million transfer included the criminally derived funds. *See id.* at 1291–93.

In reaching that decision, the court observed that, *other than by tracing funds,* there existed a limited number of methods of proving a violation of § 1957. First, the government could show that the defendant's entire business was a fraud, a theory that was rejected under the particular facts of *Rutgard. See id.* at 1290 (stating that, if the government had succeeded in proving that the defendant's whole practice was a fraud, then the defendant properly could have been convicted of

money laundering). Second, the government could prove a violation by "show[ing] only a single $10,000 *deposit* of criminally-derived proceeds." *Id.* at 1292 (emphasis added). Third, the government could satisfy its burden of proof by establishing that the defendant had transferred all the funds out of his account. *See id.* ("Commingling with innocent funds can defeat application of the statute to a withdrawal of less than the total funds in the account."). Finally, the *Rutgard* court rejected the use of a fourth method of proof, adopted by some circuits, that the depositing of any criminally derived funds in an account creates a presumption that those funds are involved in a subsequent transfer from the account. *See id.* at 1293 (stating that adopting such a rule "would be an essay in judicial lawmaking, not an application of the statute").

As part of its analysis, the Ninth Circuit in *Rutgard* also examined the differences between the two money laundering statutes, holding that:

> [F]ive elements of § 1956 differentiate it from § 1957, the statute at issue here—its title, its requirement of intent, its broad reference to "the property involved," its satisfaction by a transaction that "in part" accomplishes the design, and its requirement that the intent be to commit another crime or to hide the fruits of a crime already committed.
>
> Section 1957 has a different heading: "Engaging in monetary transactions in property derived from specified unlawful activity." It punishes by up to ten years' imprisonment and a fine anyone who:
>
>> knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity.
>
> 18 U.S.C. § 1957(a). The description of the crime does not speak to the attempt to cleanse dirty money by putting it in a clean form and so disguising it. This statute applies to the most open, above-board transaction. *See* 18 U.S.C. § 1957(f)(1) (broadly defining "monetary transaction"). The intent to commit a crime or the design of concealing criminal fruits is eliminated. These differences make violation of § 1957 easier to prove. But also eliminated are references to "the property involved" and the satisfaction of the statute by a design that "in part" accomplishes the intended result. These differences indicate that proof of violation of § 1957 may be more difficult.

*Id*. at 1291. The court thus concluded that for all of these reasons, it would "not find it helpful in interpreting § 1957 the cases applying § 1956, which speaks of design 'in whole or in part' and of 'a financial transaction involving property.'" *Id.* at 1292 (cites omitted).

The court explained that "[i]f § 1956 required tracing of specific funds, it could be wholly frustrated by commingling. For that reason, the statute not only proscribes any transaction whose

purpose is to hide criminal funds but reaches any funds 'involved' in the transaction. **Neither the same reasoning nor the same language is present in § 1957, the statute here applied**." *Id.* (Emphasis added.)

With respect to commingling, the issue present before this Court, the *Rutgard* court examined why it was not significant in Section 1957 money laundering cases:

> The monetary transaction statute cannot be made wholly ineffective by commingling. To prevail, the government need show only a single $10,000 deposit of criminally-derived proceeds. Any innocent money already in the account, or later deposited, cannot wipe out the crime committed by the deposit of criminally- derived proceeds. Commingling with innocent funds can defeat application of the statute to a withdrawal of less than the total funds in the account, but ordinarily that fact presents no problem to the government which, if it has proof of a deposit of $10,000 of criminally- derived funds, can succeed by charging the deposit as the crime; or the government may prevail by showing that all the funds in the account are the proceeds of crime

*Id.* The Ninth Circuit further explained that the "involved in" language of Section 1956 is not found in its counterpart, Section 1957:

> The statute does not create a presumption that any transfer of cash in an account tainted by the presence of a small amount of fraudulent proceeds must be a transfer of these proceeds. Unlike § 1956, § 1957 does not cover any funds "involved." To create such a presumption in order to sustain a conviction under § 1957 would be to multiply many times the power of that draconian law. It would be an essay in judicial lawmaking, not an application of the statute.

*Id.* at 1292-93.

Similarly, in the present case, concealment, or property "involved in" is not at issue, as only a violation of § 1957 is alleged. The government's burden of proof will rest on the "criminally derived" language as opposed to whether the funds were intended to conceal their source. As noted in *Rutgard,* proof of a deposit of criminal derived proceeds over $10,000 is what is relevant, not where the money was deposited into or whether the account held untainted funds (unless also criminal proceeds or necessary to calculate a minimum of $10,000).

## II.  FORFEITURE OF LAUNDERED FUNDS PURSUANT TO § 1957 IS LIMITED TO THE CRIMINALLY-DERIVED PROPERTY WHICH, IN THE PRESENT CASE, IS ALLEGED TO BE $70,000

Though the government's indictment attempts to forfeit an entire property valued at over $2 million at the time of its purchase, an indictment is not evidence, and is not presumed to be a

1   correct statement of the law. After *Rutgard*, it is clear that the government can **only** seek to forfeit
2   the $70,0000, rather than assess whether that money was concealed in a property that may or may
3   not have been "involved in" the money laundering. That is not the correct analysis.

4         In *Rutgard*, the Ninth Circuit held that the funds could be forfeited if the government
5   proved by a preponderance of the evidence that the sources of all the money involved in the §
6   1957 transfers were proceeds of crime. *Id.* at 1293. Because the court concluded, however, that the
7   government failed to prove that all of the defendant's practice was a fraud, it then also "failed to
8   prove this proposition in terms of the monetary transaction counts" and thus failed to establish that
9   the funds at issue were subject to criminal forfeiture. *Id.*

10        In the drug forfeiture context, courts have similarly held that the government can only
11  forfeit the portion of the property, or proceeds, traceable to the underlying crime. For example, in
12  *United States v. Garcia-Guizar*, 160 F.3d 511, 518 (9th Cir. 1998), the government sought to
13  forfeit all of the money found in a convicted drug offender's storage locker, arguing that "all of the
14  money should be forfeited because it was all co-mingled in Garcia's storage locker." The Ninth
15  Circuit disagreed, noting that the criminal forfeiture statute at issue was limited to "proceeds" of
16  the crime and that the government had to prove by a preponderance of the evidence that the money
17  found was proceeds of the conduct for which the defendant was convicted. *Id.; see also United*
18  *States v. One 1980 Rolls Royce*, 905 F.2d 89, 90 (5th Cir. 1990) (only the portion of the property
19  traceable to the proceeds of the criminal offense is subject to forfeiture); *United States v. 352*
20  *Northup St.*, 40 F. Supp. 2d 74 (DRI 1999) (in "proceeds" cases, forfeiture is limited to the portion
21  of property purchased with drug money; the portion traceable to the subsequent investment of
22  legitimate funds is not forfeitable; the property is apportioned after the sale). As noted in *Rutgard,*
23  in the money laundering context, § 1957 is limited to proof of $10,000 of criminal proceeds,
24  without consideration of concealment.

25        As a result, Mr. Kail respectfully requests that the Court disregard his original argument in
26  support of Jury Instruction No. 1 Re Forfeiture, as it mistakenly included language pertaining to

**DEFENDANT'S MEMORANDUM RE FORFEITURE, CASE CR 18-0172 BLF**

concealment or disguising the source of funds, which of course would only be relevant if Mr. Kail had been charged with § 1956.

The cases cited by the government in support of their instruction (ECF 105, at p. 82) pertain to violations of § 1956, and thus are inapposite. Moreover, cases from other circuits, in this context, should not be relied upon given the clear holding in *Rutgard* regarding the application of forfeiture to the differing money laundering statutes. For example, in *United States v. Huber*, 404 F.3d 1037 (8th Cir. 2005), cited by the government, the defendant was charged with violations of Sections 1956 and 1957. As such, the court concluded that the presence of legitimate funds were "involved in" the illegitimate proceeds, were part of the money laundering transactions, and were undertaken for concealment purposes. *Id.* at 1058-59 (though court did not find all that the funds involved were part of the "corpus" of the money laundering conspiracy). The Eighth Circuit also examined whether funds could be forfeited under a facilitation or promotion theory under § 1956. Such theories are only applicable where it is relevant whether the funds were "more or less free from obstruction or hindrance." *Id.* Other out-of-circuit cases cited by the government similarly discuss facilitation, concealment, obstruction or hindrance in justifying the forfeiture of untainted sources. ECF 105, at p. 82. As noted in *Rutgard*, this analysis is irrelevant in § 1957 money laundering cases.

This conclusion is further supported by the forfeiture statutes themselves: § 982(b)(1) states the forfeitures will be governed by 21 U.S.C. § 853 and under § 853(p)(1)(E), substitute property is to be forfeited where the forfeitable property has been "commingled with other property which cannot be divided without difficulty." Thus, this is a case in which, at most, the defendant would have to forfeit $70,000 in substitute assets[1] and not the entire property from which that fraction cannot be divided. Moreover, it would be the court, and not the jury, who determines what those substitute assets are (here, cash), but the property at issue is only the

---

[1] Because the $70,000 was used as part of the payment for the property, those proceeds, now converted to real estate, if determined to be "tainted," could be sought by the government in the form of cash (i.e. substitute assets) in the total of $70,000.

**DEFENDANT'S MEMORANDUM RE FORFEITURE, CASE CR 18-0172 BLF**

"tainted" funds – i.e. $70,000. The government alleges for Count 24 that $70,000 constitutes proceeds of crime, not that a $2 million house constitutes "proceeds."

Finally, Mr. Kail concedes that any Eighth Amendment issues regarding excessive fines would be determined by the Court but that here, the Court should never reach this decision because the verdict form cannot exceed the $70,000 alleged to have been laundered.

### III. Proposed Verdict Form

Based on the foregoing argument, Mr. Kail proposes the following language for the Special Verdict Form regarding forfeiture:

> We, the jury in the above-entitled case, being first duly sworn, find a special verdict as to the following property:
>
> - $70,000.
>
> We, the jury, unanimously find that there is a nexus between the $70,000 and the money laundering conviction in Count 24 of the Indictment, a violation of 18 U.S.C. § 1957, and further unanimously find that this sum is forfeitable under 18 U.S.C. § 982.
>
> - YES _____
> - NO _____

### CONCLUSION

In sum, § 1957 subjects to forfeiture allegedly "dirty" assets or a "monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." Thus, forfeitures under § 1957 cannot exceed $70,000 in the instant case and the verdict form regarding forfeiture should *only* ask whether $70,000 (rather than the entire residence, or even a percent of the residence) is subject to forfeiture. There should be no question presented to the jury as to whether the residence was involved in or traceable to the $70,000 at issue in Count 24.

**DEFENDANT'S MEMORANDUM RE FORFEITURE, CASE CR 18-0172 BLF**

Dated: January 22, 2021                    Respectfully submitted,

                                           JAYNE LAW GROUP, P.C.

                                           By:        /s/ *Julia Jayne*
                                                      Julia Jayne
                                                      Attorneys for MICHAEL KAIL

**DEFENDANT'S MEMORANDUM RE FORFEITURE, CASE CR 18-0172 BLF**                                8