# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

MICHAEL KAIL,

        Defendant.

Case No. 18-cr-00172-BLF-1

**ORDER RE: MOTIONS *IN LIMINE***

[Re: ECF 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94]

On April 26, 2018, Defendant Michael Kail was charged with nineteen counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 1346, three counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1346, and seven counts of money laundering in violation of 18 U.S.C. § 1957. *See* Indictment, ECF 1. The Court held a Final Pretrial Conference on January 14, 2021, during which it issued oral rulings on the parties' motions *in limine*. The Court's rulings on the parties' motions *in limine* are summarized as follows:

- Government's Motion *in Limine* No. 1: GRANTED
- Government's Motion *in Limine* No. 2: GRANTED
- Government's Motion *in Limine* No. 3: GRANTED
- Government's Motion *in Limine* No. 4: GRANTED
- Government's Motion *in Limine* No. 5: DEFERRED
- Government's Motion *in Limine* No. 6: DENIED
- Government's Motion *in Limine* No. 7: DENIED WITHOUT PREJUDICE
- Government's Motion *in Limine* No. 8: DEFERRED
- Defendant's Motion *in Limine* No. 1: GRANTED
- Defendant's Motion *in Limine* No. 2: GRANTED IN PART and DEFERRED IN PART

United States District Court
Northern District of California

- Defendant's Motion *in Limine* No. 3: GRANTED

- Defendant's Motion *in Limine* No. 4: DENIED

- Defendant's Motion *in Limine* No. 5: DEFERRED

- Defendant's Motion *in Limine* No. 6: GRANTED

## I.  GOVERNMENT'S MOTIONS *IN LIMINE*

### A.  Government's Motion *in Limine* No. 1 to Exclude Documents not Produced by Defendant

In its first motion *in limine*, the Government moves for "an order precluding Defendant from introducing evidence that should have been produced under the reciprocal discovery obligations of Fed. R. Cr. P. 16(b), and pursuant to Fed. R. Cr. P. 26.2 (reverse *Jencks*), requiring production of prior statements of defense witnesses (other than the defendant) that relate to the subject matter about which the defense witness(es)." ECF 81 at 2. Kail does not object to this motion. *See* ECF 95 at 1 ("Kail has no quarrel with Rule 16 and will continue to provide any documents or evidence obtained in the course of investigation leading up to or during trial.").

Under Rule 16(b), a defendant is subject to various informational disclosures to include (A) information pertaining to "books, papers, documents, data, photographs, [or] tangible objects . . . [if] the defendant intends to use the item in the defendant's case-in-chief at trial;" (B) "Reports of Examinations and Tests"; and (C) "a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence" pertaining to expert witnesses. Under Rule 26.2(a),

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

The statute embodying the rule was enacted in part to "place in the criminal rules the substance of . . . 18 U.S.C. § 3500 (the *Jencks* Act)." Advisory Committee Notes, S. 1437, 95th Cong. 1st Sess. (1977). Pursuant to Rule 26.2(a), neither the Government nor a defendant is required to produce witness statements until after the witness's testimony on direct examination.

United States District Court
Northern District of California

1 | The Court GRANTS Government's Motion *in Limine* No. 1.

2 | **B.     Government's Motion *in Limine* No. 2 to Exclude References to Punishment**

3 | In its second motion *in limine*, the Government moves to preclude "any reference by the

4 | defense to defendant's potential sentence during all phases of the trial." ECF 82 at 2. The

5 | Government argues any reference to Kail's potential sentence would be "irrelevant and

6 | prejudicial" *Id*. The Government further explains that "[r]eferences to penalties could be as overt

7 | as 'You understand the defendant is facing at least a decade in prison if convicted,' or as subtle as

8 | 'the defendant is facing a lot of time,' 'this case has serious consequences for the defendant,' 'the

9 | defendant's liberty is at stake in this trial,' or 'your decision will have consequences for a long

10 | time to come.'" *Id*. Kail does not oppose this motion.

11 | "It has long been the law that it is inappropriate for a jury to consider or be informed of the

12 | consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992); *see also*

13 | *Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should have been admonished that it "had no

14 | sentencing function and should reach its verdict without regard to what sentence might be

15 | imposed").

16 | The Court GRANTS Government's Motion *in Limine* No. 2.

17 | **C.     Government's Motion *in Limine* No. 3 to Use Exhibits in Opening**

18 | In its third motion *in limine*, the Government "seeks the Court's permission to exhibit a

19 | small number of documents and items during its opening arguments. ECF 83 at 2. The

20 | Government believes that previewing business and financial records will "aid the jury in

21 | understanding how Defendant executed and benefitted from the scheme." *Id*. The Government

22 | explains that "[m]any of these exhibits are records of regularly conducted business activities, are

23 | not controversial, and will likely be found to be self-authenticating or otherwise authentic [] under

24 | Federal Rules of Evidence 901 and 902 and [] covered by one or more exceptions to the rule

25 | against hearsay under Rule 802." *Id*. Kail does not oppose this motion.

26 | The Court GRANTS Government's Motion *in Limine* No. 3.

27 | **D.     Government's Motion *in Limine* No. 4 to Admit Statements of Party-Opponent**

28 | In its fourth motion *in limine*, the Government moves to admit statements by Kail. ECF 84

3

at 2. These statements "consist primarily of email communications between Defendant and other employees of Netflix, Inc., as well as communications between Defendant and employees or officers of companies that compensated Defendant with cash or stock." *Id*. at 2. Although "[t]he vast majority of these communications occurred using Defendant's Netflix email and his personal Google Gmail account," the Government also seeks to introduce financial statements and verbal statements made by Kail to Netflix officers and employees. *Id*. at 2. The Government contends that, under Fed. R. Evid. 801(d)(2)(A)[1], these statements are not hearsay as they are offered by the government. *Id*. (citing *United States v. Matlock*, 415 U.S. 164, 172 (1972)). Statements by nonparties included in these communications, the Government argues, may be admissible or admitted for a limited purpose. *Id*. Defendant does not oppose this motion.

The Court GRANTS Government's Motion *in Limine* No. 4.

**E. Government's Motion *in Limine* No. 5 to Exclude Defendant's Out Of Court Statements if Offered by the Defense**

In its fifth motion *in limine*, the Government moves to limit Kail from admitting his own prior out-of-court statements. ECF 85 at 2. To support this request, the Government argues that (1) Defendant's statements are inadmissible hearsay if offered by him pursuant to Fed. R. Evid. 801(d)(2)(A) and (2) Fed. R. Evid. 106 (also referred to as the rule of completeness) does not permit Defendant to introduce excerpts from his recorded statements. *Id*. at 2-3. The Government also cites Ninth Circuit authority it believes stands for the proposition that "a defendant may not use his own prior statements even where the government introduces incriminating portions of them." *Id*. at 2 (citing *United States v. Nakai*, 413 F.3d 1019, 1022 (9th Cir. 2005)).

Kail opposes this motion and argues that he "may seek admissibility as to certain written statements and will be prepared to argue each on its merits." ECF 96 at 1. He argues that (1) some of his statements may reflect his state of mind or intent and are thus admissible under Fed. R. Evid. 803(3); (2) some of his statements may be admissible under Fed. R. Evid. 801(c) to show their effect on the listener rather than the truth of the matter asserted; and (3) some of his

---

[1] Under Fed. R. Evid. 801(d)(2)(A), a statement "offered against an opposing party" and "made by the party in an individual or representative capacity" is not hearsay.

United States District Court
Northern District of California

statements may fall under Fed. R. Evid. 807, the catchall hearsay exception, which allows for the admission of statements not specifically covered by other hearsay exceptions if "the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement" and "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." *See id*. at 2-3.

Kail argues that the Government construes the rule of completeness too broadly and that the Court should "employ a case-by-case analysis of whether a particular statement sought to be admitted satisfies the Rule's directive to avoid misunderstanding and distortion, rather than issue an advance decision that no such admission could be possible." *Id*. at 3-5. Kail also raises a constitutional concern with the Government's motion *in limine*; he argues that the Government's invocation of Rule 106 could infringe upon his Constitutional rights, to include "the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). Kail argues that "[w]hen evidence is excluded on the basis of an improper application of the [evidentiary] rules, due process concerns are still greater because the exclusion is unsupported by any legitimate state justification." *United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992).

Under Fed. R. Evid. 801(c), hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement." Under Fed. R. Evid. 801(d)(2)(A), a statement offered against an opposing party that was made by the party in an individual or representative capacity is not hearsay. Under Fed. R. Evid 106, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." "Rule 106 does not render admissible otherwise inadmissible hearsay," *United States v. Mitchell*, 502 F.3d 931, 965 n.9 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2902 (2008), and instead allows an adverse party to require that other admissible evidence be introduced at the same time*, see United States v. Sine*, 493 F.3d 1021, 1037 n.17 (9th Cir. 2007) (rule of completeness "does not allow the

1  admission of otherwise inadmissible statements").

2      While the Court generally agrees with the Government that Kail may not introduce his

3  own out of court statements pursuant to Fed. R. Evid. 801, it recognizes that this broad rule must

4  be considered in tandem with the fact that the Government may not present statements that cast

5  reality in an objectively false light. *Cf. United States v. Quinones-Chavez*, 641 F. App'x 722, 725

6  (9th Cir. 2016) ("Due Process forbids the government from knowingly introducing false evidence"

7  (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). This is true even considering *Nakai*, where

8  the Ninth Circuit held that the district court properly barred the defense from introducing the

9  defendant's exculpatory statements after an FBI agent testified about defendant's inculpatory

10  statements. 413 F.3d at 1022. *Nakai*, however, did not involve a situation where the prosecution

11  presented defendant's statements in an objectively false or misleading manner. *Id*. ("In neither

12  instance was the unadmitted hearsay necessary to place the admitted statement in context.").

13      At bottom, the Government has not identified any specific statements it seeks to bar,

14  preventing the Court from conducting the fact-based, particularized analysis that these rules

15  require. The Court DEFERS ruling on Government's Motion *in Limine* No. 5 until trial.

16      **F.    Government's Motion *in Limine* No. 6 Regarding Intrinsic Evidence of Crimes**

17      In its sixth motion *in limine*, the Government moves to introduce evidence of acts "closely

18  related to Defendant's years-long scheme while employed by Netflix, Inc." ECF 86 at 3. The

19  Government explains that this evidence is "intrinsic" evidence of the charged conduct and is

20  "therefore admissible without reference to Federal Rule of Evidence Rule 404(b)." *Id*.

21      Under Rule 404(b),"[e]vidence of any other crime, wrong, or act is not admissible to prove

22  a person's character in order to show that on a particular occasion the person acted in accordance

23  with the character." This is also referred to as "other crimes" evidence. "Evidence should not be

24  treated as 'other crimes' evidence when 'the evidence concerning the ['other'] act and the

25  evidence concerning the crime charged are inextricably intertwined." *United States v. Soliman*,

26  813 F.2d 277, 279 (9th Cir. 1987). The Ninth Circuit recognizes "two categories of evidence that

27  may be considered inextricably intertwined with a charged offense and therefore admitted without

28  regard to Rule 404(b)." *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (internal

citations and quotation omitted). First, evidence may be admitted "because it constitutes a part of the transaction that serves as the basis for the criminal charge." *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). Second, evidence may be admitted "when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id*.

Pursuant to this caselaw, the Government seeks to introduce:

> 1. Evidence that Defendant received shares or share options from other companies that did business or sought to do business with Netflix, in violation of his fiduciary duties to Netflix.
>
> 2. Evidence that Defendant received and did not report to Netflix his receipt of other items and services of value, including expensive champagne and liquor, an antique map, and a private chef experience, from companies seeking to do business with the IT Department of Netflix.
>
> 3. Evidence that Defendant misrepresented to his mortgage company the source of assets used as a down payment on his residence in 2013, when in reality those funds were proceeds of the fraud scheme that Defendant deposited into accounts controlled by him in the name of Unix Mercenary, LLC.
>
> 4. Evidence that Defendant willfully failed to file with the Internal Revenue Service Forms 1040 for the tax years 2011 through 2012.

ECF 86 at 2-3. The Government argues that this evidence "should not be treated as other crimes evidence [because] the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined." *Id*. at 3. (quoting *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987) (internal marks and alterations omitted)).

Kail opposes all four categories of information the Government seeks to admit. ECF 97 at 1-3. This motion dovetails with Defendant's Motion *in Limine* No. 4. *See id*. at 1 ("Defendant's Motion in Limine No. 4 to Exclude Companies Not in Indictment (Dkt. 92) addresses many of the issues raised in the government's motion. As such, the following overlapping issues will not be repeated here: (#1) shares or share options from uncharged companies; and (#2) gifts such as champagne, liquor, map, and private chef from unnamed companies"). Given this overlap, the

United States District Court
Northern District of California

1  Court addresses categories three and four here and will address categories one and two when it

2  considers Defendant's Motion *in Limine* No. 4.

3          Even assuming that the evidence described in categories three and four is intrinsic to the

4  charged conduct, the Government's motion with respect to these categories fails.

5          ***Misrepresentation to mortgage company.*** The Government's papers do not offer any

6  specific arguments or legal authority to support the proposition that a homebuyer is required to

7  attest that funds used toward a mortgage down payment are not the proceeds of a fraud scheme.

8  *See* ECF 86. Kail, for his part, argues that he was never asked where or how he obtained the funds

9  he used to pay for his down payment. ECF 97 at 2. He also points out that the funds described in

10 category three were "obviously" transferred from his Unix Mercenary, LLC bank account to the

11 title company. *Id*. In the absence of *any* authority that a homebuyer is required to attest that funds

12 used toward a mortgage are not the proceeds of a fraud scheme, the Court agrees with Kail. This

13 conclusion is further supported by the fact that there is no evidence Kail attempted to obfuscate

14 Unix Mercenary, LLC's involvement in funding his down payment.

15         The Court DENIES the motion with respect to "[e]vidence that Defendant misrepresented

16 to his mortgage company the source of assets used as a down payment on his residence in 2013."

17 Exhibit 702, the mortgage document at issue, may be offered at trial, but not as evidence that Kail

18 made a misrepresentation to his mortgage company.

19         ***Willful failure to file tax returns***. During the motion hearing, the Government conceded

20 that Kail had not failed to file his taxes in 2011 or 2012. *See also* ECF 97 at 2-3 ("Mr. Kail has no

21 idea who or what the government is referring to. He has filed taxes every year, including in 2011

22 and 2012."). The Government explained that it intended to file a motion regarding evidence that

23 Kail *misrepresented* his income when he filed his taxes.

24         Because that issue is not before the Court, and Kail was not provided an opportunity to

25 address it, the Court DENIES the motion as presented with respect to "[e]vidence that Defendant

26 willfully failed to file with the Internal Revenue Service Forms 1040 for the tax years 2011

27 through 2012."

28

1

### G.   Government's Motion *in Limine* No. 7 to Exclude Testimony Regarding Defendant's Character

2        In its seventh motion *in limine*, the Government moves to exclude testimony by Bob Reid

3   about Kail's character. ECF 87 at 2. The Government explains that it expects Kail to seek to admit

4   Reid's testimony that "'[h]e never witnessed anyone accuse [Kail] of impropriety,' that 'Mike

5   [Kail] has an incredible reputation,' and after being raised by an army ranger, he is someone who

6   is straight and narrow and with integrity." *Id*. Such testimony, the Government argues, violates

7   Fed. R. Evid. 404 and 405.

8        The Government argues that Kail's character is not an essential element of wire fraud, mail

9   fraud, or money laundering and therefore testimony regarding specific instances of conduct is not

10  admissible pursuant to Rule 405(b). ECF 87 at 3. The Government alternatively argues that Reid's

11  testimony about Kail's reputation or character is nonetheless inadmissible because Reid resides in

12  San Diego and knew and worked with Defendant many years before he relocated to Los Gatos and

13  started his worth with Netflix. *Id*. In support of this argument, the Government points to the case

14  *Michelson v. United States*, where the Supreme Court held that a character witness testifying to a

15  defendant's reputation must be familiar with "the community in which [the individual] lived and

16  the circles in which [they have] moved." 335 U.S. 469, 477-78 (1948). Finally, the Government

17  argues that Reid's testimony appears to be limited to one instance, namely "Defendant's refusal to

18  demand compensation for his advice to a company unrelated to the charges." ECF 87 at 3-4. The

19  Government contends that Kail "may not seek to prove his good character through evidence of

20  specific 'non-acts,' i.e., by showing that he acted lawfully on other occasions" and that "generosity

21  has been found to not constitute a pertinent trait." *Id*. at 3-4.

22       Kail opposes this motion, arguing that he is permitted under Fed. R. Evid. 404(a)(2) to

23  offer evidence of a pertinent character trait. ECF 98 at 1. Kail contends that he may "introduce

24  evidence of his character as a law-abiding citizen" because "Kail will place his character for

25  honesty, integrity, and law-abidingness at issue because he denies that he committed honest

26  services fraud and contends he lacked the requisite specific intent to defraud" *Id*. at 2-3. Kail also

27  rejects the Government's implication that "Reid may not have sufficient knowledge of Mr. Kail to

28  offer his opinion" given that Reid has known Kail for years and thus properly may testify about

United States District Court
Northern District of California

United States District Court
Northern District of California

Kail's "relevant positive character traits, such as honesty, integrity and truthful conduct." *Id*. at 4; *see also id*. at 5 ("Mr. Reid has known Mr. Kail since 2007, when he worked with him. He interacted with Mr. Kail during the years at issue (2012-2014), and to the present day. He often visited Mr. Kail in Northern California and even sought to do business with Netflix when Mr. Kail worked there.").

Fed. R. Evid. 404(a) prohibits the use of character evidence to prove that on a particular occasion a person acted in accordance with that character or trait. This is sometimes referred to as "propensity evidence." An exception to this rule permits "a defendant [to] offer evidence of the defendant's pertinent trait." Fed. R. Evid. 404(a)(2)(A). "The word 'pertinent' is read as synonymous with 'relevant.' Thus, the basic issue is whether the character trait in question would make any fact 'of consequence to the determination' of the case more or less probable than it would be without the evidence of that trait." *United States v. Angelini*, 678 F.2d 380, 381 (1st Cir. 1982) (citing *United States v. Staggs*, 553 F.2d 1073, 1075 (7th Cir. 1977)); *see also United States v. Han*, 230 F.3d 560, 564 (2nd Cir. 2000) ("Federal R. Evid. 404(a)(1) applies a lower threshold of relevancy to character evidence than that applicable to other evidence . . . 'The justification appears to be based on notions of fairness rather than logic; the defendant who, with the considerable forces of government arrayed against him and who may have little more than his good name to defend himself, should not be precluded from presenting even such minimally probative evidence.'" (internal citation omitted)).[2]

Rule 405 outlines the methods of proving character. *See United States v. Keiser*, 57 F.3d 847, 855 (9th Cir. 1995). Although typically character evidence is only admissible in the form of reputation or opinion evidence, when a person's character or character trait is an essential element of the crime charged, the character may also be proved by relevant specific instances of conduct. Fed. R. Evid. 405(b); *State of Ariz. v. Elmer*, 21 F.3d 331, 335 (9th Cir. 1994). In order to determine whether a particular character trait constitutes an essential element of the crime charged

---

[2] The Court rejects the Government's reliance on *United States v. Langford*, 647 F.3d 1309, 1329. Although the Government suggests this case supports a narrow interpretation of the word "pertinent," ECF 87 at 4, the Eleventh Circuit affirmed the district court's decision to admit evidence of the defendant's generosity. *Langford*, 647 F.3d at 1329.

under Rule 405, the court must ask: "would proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge, claim, or defense? If not, then character is not essential and evidence should be limited to opinion or reputation." *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995).

Testimony that Kail is law-abiding and honest is clearly relevant under Rule 404(a)(2). However, it is also clear that there are limits on the presentation of pertinent trait evidence. *See* Fed. R. Evid 405. This motion *in limine* asks the Court to resolve this tension in a vacuum, which it cannot and will not do. The Court DENIES Government's Motion *in Limine* No. 7 as overbroad WITHOUT PREJUDICE to the Government re-asserting it with respect to specific testimony at trial.

### H.   Government's Motion *in Limine* No. 8 to Admit Self-Authenticating Financial Records

In its eight motion *in limine*, the Government informs the Court that it is "conferring with Defendant regarding streamlining certain aspects of the trial, including through the use of stipulations regarding the admissibility of business records without the need to call a custodian." ECF 88 at 2. The Government conditionally moves to admit certain exhibits as business records, should the parties not finalize the aforementioned stipulations. *Id*. The Government outlines the documents it seeks to introduce as business records. *Id*. at 2-3. It also notes it intends to file a Rule 902(11) notice identifying these records, which have already been produced in discovery and are contained within the Government's Exhibit List. *Id*. at 2. Defendant does not oppose this motion.

The Court DEFERS ruling on Government's Motion *in Limine* No. 8. The parties SHALL continue to meet and confer to reach an agreement about admitting these records. Should the parties fail to reach an agreement as to any documents, the Government may re-assert this motion.

## II.   DEFENDANT'S MOTIONS *IN LIMINE*

### A.   Defendant's Motion *in Limine* No. 1 to Exclude Evidence of Civil Settlement with Netflix and Exhibit 957

In his first motion *in limine*, Kail moves to exclude evidence of his state court civil settlement with Netflix, along with civil settlement communications in Government's Exhibit 957. ECF 89 at 1. Kail argues that the settlement and associated communications are irrelevant and

inadmissible under Fed. R. Evid. 401, 402, and 408. *Id*. at 1-2. He also argues that under Fed. R. Evid. 403 the probative value of these documents is outweighed by the unfair prejudice and confusion they may cause. *Id*. at 2. The Government does not object to the motion with respect to the state court civil settlement. *See* ECF 108. With respect to settlement communications, the Government states that it does not intend to offer Exhibit 957 to prove "the validity of the disputed claim or to impeach." *Id*. at 2. It, however, requests that the Court deny this motion without prejudice "because the documents may be offered for a purpose not explicitly prohibited by [Rule 408], depending on the course of the trial." *Id*.

Rule 408(a) bars evidence of compromise offers and negotiations "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." But Rule 408(b) "permits the Court to admit evidence of settlement negotiations for other purposes, 'such as proving a witness's bias of prejudice.'" *United States v. Yang*, 2019 WL 5536213, *7 (ND Cal. October 25, 2019) (quoting Fed. R. Evid 408(b)). Rule 408(b) itself does not limit or identify all other purposes, and it is the Court's province to determine whether this type of evidence is offered for a purpose not barred by the Rule. *Yang*, 2019 WL at *7 ("Rule 408(a) only bars evidence of settlement negotiations" as expressly identified).

The Court GRANTS Defendant's Motion *in Limine* No. 1 with respect to the state court civil settlement. The Court GRANTS Defendant's Motion *in Limine* No. 1 with respect to the civil settlement communications in Exhibit 957 WITHOUT PREJUDICE to the Government offering Exhibit 957 for a proper purpose at trial. The Court agrees with the Government that Rule 408 contains exceptions that might allow the Government to properly introduce the settlement communications. Absent the context of trial, the Government has not shown that any exceptions apply. Thus, the Government may seek admission of Exhibit 957 at trial when the Court can consider the purpose for which the communications are offered along with other relevant circumstances.

### B.    Defendant's Motion *in Limine* No. 2 to Exclude Irrelevant Exhibits

In his second motion *in limine*, Kail moves to exclude Exhibits 2 and 930. ECF 90 at 1. Kail argues that these exhibits are not relevant under Fed. R. Evid. 401 and that any probative

value the exhibits have is outweighed by danger of prejudice, confusion, and delay under Fed. R. Evid. 403. *Id*. at 2-3.

Exhibit 2 "includes pages from a slideshow that may have been presented to Netflix employees." ECF 90 at 1. "Kail has never seen this slide show before and never worked with the employees featured in the first 21 pages." *Id*. at 2. At the motion hearing, he further contended that the presentation post-dates his employment at Netflix and that Netflix's conflict of interest policies changed during this time period, rendering the slideshow irrelevant. He also argues that this exhibit is inadmissible under Fed. R. Evid. 403 because "the danger of unfair prejudice, confusion and undue delay are inevitable." *Id*. at 3. The Government contends that Exhibit 2 is relevant as it is probative of Netflix's policy regarding conflicts of interest. ECF 112 at 2-3. It argues that it will "establish at trial that the document was created and shown to Netflix employees in April 2014, [during which time] Defendant was employed at Netflix and receiving bribes and kickbacks from third parties." *Id*. at 3. Finally, the Government contends that Kail's objection to Exhibit 2 is vague and, as such, the Court should decline to exclude this exhibit before trial. *Id*.

Exhibit 930 is an undated photo of Mr. Kail dressed as Robin Hood with the social media caption: "Taking from the rich and giving to the poor [See More]." ECF 90 at 2. Kail argues that this exhibit is not relevant because "[i]t is obvious that the caption was intended as a joke reciting the popular expression made by Robin Hood. Presumably, the Government seeks to flaunt this photo to the jury to suggest that Mr. Kail is 'taking from the rich…' (ie. Netflix?)." *Id*. at 2. He also argues that this exhibit fails a Fed. R. Evid. 403 analysis as "the danger of unfair prejudice, confusion and undue delay are inevitable." *Id*. at 3. The Government responds that Exhibit 930 is relevant as it goes to the state of Kail's mind and perception of himself. ECF 112 at 2. It also argues that, should the Court find the exhibit relevant, it should delay ruling on Fed. R. Evid. 403 until trial when the Court can view the evidence "in context and in light of other trial evidence." *Id*.

***Exhibit 930: Robin Hood photograph***. Applying Fed. R. Evid. 403, the Court concludes that limited probative value of Exhibit 930 is outweighed by the danger of unfair prejudice. A photograph of Kail dressed as Robin Hood for Halloween has essentially no probative value in

regards to the charged conduct. Although the Government argues that it is relevant to Kail's state of mind and perception of himself, it is completely unclear to the Court how the narrative of Robin Hood dovetails with the conduct alleged in the indictment. The photograph is also highly prejudicial as it serves to evoke unsubstantiated associations between Kail and stealing from others. The Court GRANTS Defendant's Motion *in Limine* No. 2 as to Exhibit 930.

*Exhibit 2: Slideshow.* The slideshow is clearly relevant as to Netflix's conflict of interest policy. Fed. R. Evid. 401. Turning to consider Fed. R. Evid. 403, the Court finds that the slideshow offers considerable probative value about Netflix's conflict of interest policy. The slideshow presents no danger of prejudice given it does not contain any statements or pictures that would inflame the jury; indeed, the slideshow largely appears to be an internal human resources presentation. The Court credits Kail's concerns that this exhibit may cause confusion given his belief that it contains policies that post-date the charged conduct; however, at this juncture, the Court has no reason to believe this confusion cannot be properly ironed out during cross-examination. This is particularly true given the Government attested at the motion hearing that it plans on using this document during its rebuttal and only after laying proper foundation. This balancing suggests that the exhibit's probative value is not outweighed by prejudice, confusion, or delay under Fed. R. Evid. 403. Nonetheless, the Court DEFERS ruling on Defendant's Motion *in Limine* No. 2 as to Exhibit 2. Kail may re-assert this motion, if appropriate, at trial.

## C.   Defendant's Motion *in Limine* No. 3 to Exclude Evidence of Mr. Kail's Compensation with Netflix

In his third motion *in limine*, Kail moves to exclude evidence of Kail's compensation pursuant to Fed. R. Evid. 402 and 403. ECF 91 at 1. "Kail earned between $400,000 and $883,000 per year in salary and bonuses at Netflix between 2011 and 2014." *Id*. Kail argues that "[t]he Ninth Circuit prohibits the bare admission of evidence related to a criminal defendant's financial circumstances when offered to establish a profit motive." *Id*. (citing *United States v. Mitchell*, 172 F.3d 1104, 1110 (9th Cir. 1999)). Kail argues that the Government cannot connect his compensation to the charged offense. *Id*. at 1-2. With respect to Fed. R. Evid. 403, Kail argues his compensation would have a significant prejudicial effect as it "could trigger unwarranted negative

United States District Court
Northern District of California

1    associations on the part of certain jurors to infect their view of the evidence." *Id*. at 2. Finally, Kail

2    argues that this evidence would cause delay as it would "necessitate the admission of additional

3    testimony and evidence concerning the components of his compensation and W2s and possibly

4    even a comparative analysis of CTO salaries in the industry in that time period." *Id*. The

5    Government responds that evidence of salary is not "categorically inadmissible" and that Kail

6    cites no authority from honest services fraud cases in support of this motion. ECF 110 at 1-2. It

7    also argues that "salary paid by the victim employer [Netflix] is direct evidence inextricably

8    related to the crime charged in this case." *Id*. at 2-3.

9            The Court disagrees with the Government. Kail's precise salary is not relevant because the

10   scheme alleged does not implicate Kail's salary. *See United States v. Unruh*, 855 F.2d 1363, 1377

11   (9th Cir. 1987) (admonishing that evidence of a defendant's wealth "should not be offered unless

12   clearly connected" to the specific charges or conduct at issue). Instead, it involved a kickback

13   scheme independent from Kail's salary. *See generally* Indictment. And while the Government

14   suggests that this evidence is relevant to its theory that Netflix had a "philosophy of paying

15   employees very well, in part to ensure loyalty and avoid financial conflicts of interest," there

16   exists no shortage of millionaires or billionaires who commit white collar crime. *See, e.g.,*

17   *Mitchell*, 172 F.3d at 1109 (9th Cir. 1999) ("There is a distinction between an interest, in the sense

18   that *it is in anyone's interest to be richer rather than poorer*, and an inclination. A mere interest,

19   unconnected with inclination, desperation, or other evidence that the person was likely to commit

20   the crime does not add much, in most cases, to the probability that the defendant committed a

21   crime." (emphasis added)).

22           The Court GRANTS Defendant's Motion *in Limine* No. 3. The Government is prohibited

23   from offering evidence of Kail's compensation in its case in chief. The Court will not, however,

24   order the redaction of Kail's compensation from documents that are otherwise admissible. While

25   the Government may not reference Kail's specific compensation, the Court will not prohibit the

26   Government from referencing the fact that Kail held a high-ranking position and was highly

27   compensated at Netflix. The Court also cautions that should the Defense open the door on this

28   issue, the Government may walk through it.

### D.   Defendant's Motion *in Limine* No. 4 to Exclude Companies Not in Indictment

In his fourth motion *in limine*, Kail moves to exclude "evidence of Mr. Kail doing business with unnamed companies other than the nine [outlined in the indictment]." ECF 92 at 1.

> Other than the nine companies named in the Indictment, Mr. Kail independently consulted, formally and informally advised, invested in, or received options or shares from various other technology companies. In many instances, there were press releases, cross-company introductions, and countless emails showing the public nature of these relationships. The government has not alleged any quid pro quo with respect to these additional companies.

*Id*. at 1.

In support of this request, Kail argues that evidence relating vendors not named in the indictment is not "inextricably intertwined" with the charged conduct and is not otherwise inadmissible under Rule 404(b). *Id*. at 2-3. Kail also points to Ninth Circuit authority to argue that the Supreme Court limited the reach of 18 U.S.C. § 1346 to "'criminalize[] *only* bribery and kickback schemes, *not* failures to disclose a conflict of interest.'" *Id*. at 4-5 (quoting *United States v. Garrido*, 713 F.3d 985, 993 (9th Cir. 2013) (original emphasis)). Finally, Kail argues that to "add on a number of additional companies and create mini-trials for each is more prejudicial than probative and should be excluded pursuant to Federal R. Evid. 403." *Id*. at 2, 5. The Government responds that evidence of "uncharged criminal scheme conduct" is admissible because "[t]his conduct arose out of the same transaction or series of transactions as the charged offense and is therefore admissible under Rule 401 as part of the charged scheme to defraud Netflix. This uncharged scheme evidence is not subject to Rule 404(b)." ECF 109 at 1-3.

As the Court noted above, this motion dovetails in part with the Government's sixth motion *in limine*. In that motion, the Government argued that the following categories of evidence "should not be treated as other crimes evidence when the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined":

1       Evidence that Defendant received shares or share options from other companies that did business or sought to do business with Netflix, in violation of his fiduciary duties to Netflix.

2       Evidence that Defendant received and did not report to Netflix his receipt of other items and services of value, including expensive champagne and liquor, an antique map, and a private chef experience, from companies seeking to do business with the IT Department of Netflix.

ECF 86 at 2-3.

Under Rule 404(b),"[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." This is also referred to as "other crimes" evidence. "Evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987). The Ninth Circuit recognizes "two categories of evidence that may be considered inextricably intertwined with a charged offense and therefore admitted without regard to Rule 404(b)." *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (internal citations and quotation omitted). First, evidence may be admitted "because it constitutes a part of the transaction that serves as the basis for the criminal charge." *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). Second, evidence may be admitted "when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id.*

The indictment charges Kail with a scheme to defraud Netflix of his honest services and the use of mail and wires in furtherance of this scheme. *See generally* Indictment. Kail allegedly furthered this scheme by using his position as Netflix Vice President of Internet Technology to approve contracts with and payments to vendors in exchange for kickbacks. *Id.* at 3. The indictment alleges some specific examples of the scheme to defraud, such as through the receipt of kickbacks from Netflix vendors Netenrich, Inc., VistaraIT, Inc., Platfora, Inc., Netskope, Maginatics, Docurated, ElasticBox, SumoLogic, Inc., and Numerify, Inc. *Id.* at 3-4.[3]

---

[3] According to the Government, Kail also defrauded Netflix by receiving or soliciting kickbacks

United States District Court
Northern District of California

United States District Court
Northern District of California

Under 18 U.S.C. § 1343, the wire fraud statute under which Kail was charged:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

The mail fraud statute, 18 U.S.C. § 1341, similarly involves a "scheme or artifice to defraud." Under 18 U.S.C. § 1346, "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." The elements of mail and wire fraud are "(A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

The uncharged scheme conduct described in categories one and two of the Government's sixth motion *in limine* and in Defendant's fourth motion *in limine* is admissible because it is part of the charged conduct and does not constitute "other crimes" evidence under Rule 404(b). Wire and mail fraud require that a defendant formed or intended to form a scheme to defraud. 18 U.S.C. §§ 1341, 1343. The acts described in categories one and two speak directly to whether Kail formed a scheme to defraud— a necessary element of the charged conduct. The uncharged acts are thus part and parcel of the charged conduct – the fraudulent scheme as a whole. This conclusion is supported by the Ninth Circuit's opinion in *United States v. Loftis*, 843 F.3d 1173, 1176 (9th Cir. 2016). In *Loftis*, the defendant was charged with five counts of wire fraud for "victimiz[ing] investors through false representations about his oil business." *Id*. at 1175. The indictment charged "a broad scheme to defraud, spanning six years, several states and numerous alleged victims." *Id*. At trial, the government intended to "offer evidence of investor victims not specifically named in

---

in the form of shares and options from other Netflix vendors while employed at Netflix, including RelateIQ, OneLogin, Inc., Cyphort, Inc., SnapLogic, Inc., CloudMeter, Inc., Actifio, Pure Storage, Inc., Tidemark, Inc., Plivo, Inc., and others. ECF 109 at 3. These vendors do not appear in the indictment.

1    the indictment, additional uses of the wires and aspects of the scheme carried out in states other

2    than Montana." *Id*. The district court excluded some of this uncharged conduct because "the

3    evidence the government sought to introduce pertained to 'other wire frauds' that would be subject

4    to exclusion under Federal Rule of Evidence 404(b) unless the government could show the

5    evidence was either 'inextricably intertwined with the scheme Loftis employed in Montana' or

6    admissible for one of the purposes authorized by Rule 404(b) itself." *Id*. at 1175-76.

7        The Ninth Circuit reversed, holding that evidence of uncharged transactions was not

8    evidence of other crimes or acts under Rule 404(b). *Id*. at 1176. It explained that, because the

9    evidence of uncharged conduct spoke directly to an element of the crime, the evidence was not

10   subject to the limitations of Rule 404(b). *Id*. It continued: "the commission of a mail fraud or wire

11   fraud offense necessarily includes a fraudulent scheme as a whole, including additional executions

12   of the scheme that were not specifically charged." *Id*. (internal punctuation omitted) (citing *United

13   States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016)). Therefore, the uncharged transactions the district

14   court disallowed were part of the charged offense – the fraudulent scheme as a whole – and the

15   government was permitted to introduce evidence of uncharged transactions to prove the first

16   element of wire fraud – the existence of a scheme to defraud. 843 F.3d at 1175. So too here.

17       The uncharged conduct is alternatively admissible as it "constitutes a part of the

18   transaction that serves as the basis for the criminal charge." *DeGeorge*, 380 F.3d at 1220; *see

19   Loftis* 843 F.3d at 1178 ("even if the uncharged transactions at issue were not part of the crime

20   charged, they would not be subject to exclusion under Rule 404(b) because they are "part of the

21   same transaction" as the charged transactions.").

22       The Court rejects Kail's invocation of *Skilling v. United States*, 561 U.S. 358, 368 (2010).

23   ECF 92 at 4-5. In *Skilling*, the Supreme Court was clear that "Congress intended at least to reach

24   schemes to defraud involving bribes and kickbacks." *Id*. The indictment clearly outlines a scheme

25   to defraud involving kickbacks. *See generally* Indictment at 3 ("The gist of the scheme was that

26   KAIL used his position as Vice President of Internet Technology at Netflix to approve contracts

27   with and payments to vendors… In return for these contracts and payments, [vendors] paid Kail

28   kickbacks, including payments determined as a percentage of the business they did with Netflix.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Finally, Rule 403 does not prohibit the admission of this evidence. The evidence the Government anticipates it will introduce is highly probative of a specific element of the charged offense, namely Kail's alleged scheme to defraud. The information is not prejudicial as it speaks to the very conduct with which Kail is charged and does not otherwise inflame one's passions. Nor will the presentation of this evidence create a mini-trial or a waste of time. The information the Government seeks to include is bound by the limitations delineated below, which significantly reduce such a risk.

The Court DENIES Defendant's Motion *in Limine* No. 4 and GRANTS the Government's Motion *in Limine* No. 6 with respect to categories one and two. This holding is cabined by the Government's representation that it does not intend to offer this evidence during its case in chief. The Government must also establish a nexus between the allegations of fraud and the evidence it seeks to introduce; the Court limits the Government to offering evidence in categories one and two where (1) the company was a Netflix vendor; (2) Kail was involved in the contract between Netflix and the vendor; and (3) Kail received something of value from the vendor. At the motion hearing, the Government affirmed that the evidence it seeks to introduce adheres to these limitations.

### E.    Defendant's Motion *in Limine* No. 5 to Exclude Hearsay Evidence

In his fifth motion *in limine*, Kail moves on hearsay grounds to exclude nineteen email documents on the Government's exhibit list. ECF 93 at i-ii. Kail argues that because emails are not presumed to be business records and no independent hearsay exception exists for the documents, they should be excluded. *Id*. at 1. He also argues that "[i]n the event this Court finds that one or more of the pieces of challenged evidence to overcome the hearsay objection, this Court may still preclude the government from admitting it at trial pursuant to Fed. R. Evid. 403."

With the exception of Exhibit 471, the Government opposes this motion. ECF 113 at 1. The Government rejects Kail's "blanket objection" that the emails at issue are not business records. *Id*. at 1-2. According to the Government, "Defendant prematurely seeks to have the Court sustain objections to many potential business records before the government has the opportunity to obtain certificates of business records or call custodians at trial to meet the Rule 803(6) standard."

20

*Id*. at 2. The Government also argues that many of the exhibits may be offered for nonhearsay purposes. *See, e.g., id*. at 3.

Under Fed. R. Evid. 803(6), business records fall within an exception to the hearsay rule. For a document to be considered a business record, the following criteria must be satisfied: "(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

The Court agrees with the Government that it cannot rule on the business records issue until trial. This is particularly true given the Government indicates it intends to obtain the appropriate custodians and certificates. Similarly, the Court cannot rule on whether a particular document falls under an independent hearsay objection without more information about the purpose for which the document is offered.

The Court declines to issue an order broadly precluding categories of evidence in the absence of the context in which it is offered at trial and DEFERS ruling on Defendant's Motion *in Limine* No. 5 until trial.

### F.   Defendant's Motion *in Limine* No. 6 Regarding Exclusion and Preparation of Trial Witnesses

In his sixth motion *in limine*, Kail requests that the Court: (1) exclude all government witnesses not specifically exempted under Fed. R. Evid. 615 from listening to the testimony of other witnesses; (2) exclude non-exempt witnesses from listening to pretrial motions and opening statements; (3) exclude non-exempt witnesses from remaining in the courtroom; (4) limiting the government's representative to one case agent under Fed. R. Evid. 615; (5) order government witnesses to not read trial transcripts or discuss the case or their testimony with anyone other than counsel. ECF 94. The Government does not oppose these requests, "but opposes any further relief

1    or gag on witnesses, to the extent such relief is sought by Defendant." ECF 111 at 2. Although

2    Kail brought this motion with respect to Government witnesses, all orders the Court issues on this

3    motion are reciprocal and apply equally to defense witnesses unless explicitly noted otherwise.

4         Fed. R. Evid. 615 provides that "[a]t the request of a party the court shall order witnesses

5    excluded so that they cannot hear the testimony of other witnesses." Rule 615 is intended to ensure

6    a fair trial by preventing collusion of witnesses and fabrication of testimony, and by helping reveal

7    instances where such fabrication or collusion actually occurs. *See Geders v. United States*, 425

8    U.S. 80, 87 (1976) (observing that the rule "exercises a restraint of witnesses 'tailoring' their

9    testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid");

10   *see also Taylor v. United States*, 388 F.2d 786, 788 (9th Cir. 1967) (stating that exclusion is

11   designed to "prevent the shaping of testimony by hearing what other witnesses say").

12        Rule 615 makes the exclusion of witnesses mandatory upon request. *United States v.

13   Ell*, 718 F.2d 291, 292 (9th Cir. 1983) ("The rule makes the exclusion of witnesses a matter of

14   right and the decision is no longer committed to the court's discretion as it once was."); *United

15   States v. Brewer*, 947 F.2d 404, 407-11 (9th Cir. 1991) ("The use of the word 'shall' makes it clear

16   that a district court must comply with a request for exclusion."). A federal agent, or a local law

17   enforcement officer working with federal agents, qualifies for exemption from an exclusion order.

18   *See* Fed. R. Evid. 615(b); *see also United States v. Thomas*, 835 F.2d 219, 222-23 (9th Cir. 1987)

19   (trial court did not err in allowing FBI agent who also testified to sit at counsel table throughout

20   trial, since agent qualified as officer representing the government).

21        The Court GRANTS Defendant's request to exclude witnesses not exempted under Fed. R.

22   Evid. 615 from listening to other witness testimony.

23        The Court GRANTS Defendant's request to exclude witnesses not exempted under Fed. R.

24   Evid. 615 from listening to pretrial motions and opening statements.

25        The Court GRANTS Defendant's request to exclude witnesses not exempted under Fed. R.

26   Evid. 615 from remaining in the courtroom after testifying or otherwise listening to the trial via

27   teleconference.

28        The Court GRANTS Defendant's request to limit the Government's representative under

United States District Court
Northern District of California

1    Fed. R. Evid. 615 to one case agent.

2         The Court ORDERS all counsel to admonish witnesses that they are not to read trial

3    transcripts or to discuss the case and their testimony with anyone other than counsel.

4         To be clear, the Court has not been asked to issue a press gag order, nor is there currently a

5    reason for it to believe one is appropriate here. The jury will be advised, as always, not to read

6    anything in the press about the case.

7                                          * * *

8         To the extent disputes arise during trial, the Court is available to address motions on the

9    record at 8:30 A.M. each Court day before the jury arrives. Although a written motion is not

10   required, a party choosing to file a written motion for a hearing the next morning is limited to one

11   three-page motion due by 5:00 P.M. the preceding Court day. If a party intends to raise matters

12   orally it shall inform the Court and the other parties on or before 5:00 P.M. of the intention to

13   appear for a hearing at 8:30 A.M. the following Court day.

14

15        **IT IS SO ORDERED.**

16

17   Dated: January 26, 2021

18                                         _____

19                                         BETH LABSON FREEMAN
                                           United States District Judge

United States District Court
Northern District of California