*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED.*

**WILLKIE FARR & GALLAGHER LLP**
JONATHAN A. PATCHEN (SBN 237346)
One Front Street
San Francisco, CA  94111
Telephone: (415) 858-7594
Fax: (415) 858-7599
jpatchen@willkie.com

*Attorney for Non-Party Vance Loiselle*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>           Plaintiff,<br><br>    vs.<br><br>MICHAEL KAIL et al,<br><br>           Defendant. | Case No.  CR 18-00172 BLF<br><br>**NOTICE OF MOTION AND MOTION OF NON-PARTY VANCE LOISELLE TO MODIFY OR QUASH THE TRIAL SUBPOENA TO VANCE LOISELLE**<br><br>**Courtroom**:  No. 3 – 5th Floor<br>**Judge**:     Hon. Beth L. Freeman<br>**Trial Date:** April 7, 2021<br>**Hearing:**    TBA |

**NOTICE OF MOTION AND MOTION**

**TO THE CLERK OF THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at a date and time to be set by the Court, before the Honorable Beth L. Freeman in Courtroom 3, 5th Floor, 280 South First Street, San Jose, California 95113, non-party Vance Loiselle, by and through his undersigned counsel, will, and hereby does, move the Court, pursuant to Rules 15 and 17 of the Federal Rules of Criminal Procedure, for an order modifying or quashing the government's trial subpoena to Mr. Loiselle, dated January 25, 2021. Specifically, Mr. Loiselle moves the Court for an order providing for, in lieu of personal appearance at trial, a Rule 15 deposition or for two-way videoconference testimony at trial. Absent such relief, Mr. Loiselle moves to quash the subpoena.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Declarations of Jonathan A. Patchen, Mr. Loiselle, and Dr. Katie Baird, the pleadings and papers on file in this matter, and other materials or arguments as may be presented.

**STATEMENT OF ISSUE TO BE DECIDED**

Whether this Court should order a Rule 15 deposition, permit two-way videoconference testimony at trial, or otherwise modify or quash the government's trial subpoena issued to Mr. Loiselle, a non-party, in order to prevent an unreasonable and oppressive medical burden on and a substantial health risk to Mr. Loiselle.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  Introduction**

Non-Party Vance Loiselle has been subpoenaed to testify in this matter. Mr. Loiselle, who lives in Boston, Massachusetts, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Traveling to San Jose presents substantial medical risk to Mr. Loiselle, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ 19 and suffering severe—if not life-threatening—symptoms. Contracting COVID-19 would also

1 ▮

2 and the devastating personal cost it imposes on him and his family—returning.

3  Mr. Loiselle is sensitive to the competing interests in this case that the Court must navigate to ensure a fair trial—the government has a strong interest in enforcing federal criminal law while the defendant has a constitutional right to confront witnesses.  Nevertheless, neither of these interests are so compelling as to endanger the health of a non-party, out-of-state witness who is especially vulnerable to the risks posed by the COVID-19 pandemic due to his severe underlying health condition.  Therefore, the Court should modify the subpoena to permit Mr. Loiselle to testify via deposition near his residence or via live two-way video conference at trial.  And if no alternative is available, then the Court should quash the subpoena in its entirety.

## II. Background

### A. Mr. Loiselle's Expected Testimony

The Government served a subpoena dated January 25, 2021 on Mr. Loiselle, a non-party, seeking to compel his appearance in person to testify at trial in San Jose, California in the above-captioned matter (the "Subpoena").  *See* Declaration of Jonathan A. Patchen ("Patchen Decl."), Ex. A.  Mr. Loiselle was SumoLogic, Inc.'s Chief Executive Officer during the time period relevant to the indictment.  *See* Declaration of Vance Loiselle ("Loiselle Decl.") ¶ 3.  The government expects Mr. Loiselle to testify about the products and services developed by SumoLogic, Inc., his communications with Michael Kail (the "Defendant"), the circumstances of Defendant's advisory board role at SumoLogic, Inc., and shares and other items of value offered by SumoLogic, Inc. to Defendant.  *See* Dkt. 115 (United States' Witness List) at 4.

### B. Mr. Loiselle's Personal Circumstances

Mr. Loiselle currently resides in Boston, Massachusetts.  *See* Loiselle Decl. ¶ 4.  He has suffered severely for many years ▮ *See* Loiselle Decl. ¶ 5; Declaration of Dr. Katie Baird ("Dr. Baird Decl.") ¶ 2. Mr. Loiselle has ▮

▮ *See* Dr. Baird Decl. ¶ 3; Loiselle Decl. ¶ 5.  Additionally, Mr. Loiselle has also experienced some rare conditions associated ▮

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮ *See* Dr. Baird Decl. ¶ 3; Loiselle Decl. ¶ 6.  The disease has had a significant impact on

3 his health and well-being, as well as the well-being of his family.  *See* Loiselle Decl. ¶ 12-13.

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Loiselle Decl. ¶ 7;

5 Dr. Baird Decl. ¶ 4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dr. Baird Decl. ¶ 4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8 ▮▮▮▮▮▮▮▮▮ *See* Dr. Baird Decl. ¶ 5; Loiselle Decl. ¶ 8. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dr. Baird Decl.

11 ¶ 5; Loiselle Decl. ¶ 8-9. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dr. Baird Decl. ¶ 6; Loiselle Decl. ¶ 9.

14 Mr. Loiselle should not travel for trial testimony.  *See* Dr. Baird Decl. ¶ 7. *See also Travel During*

15 *COVID-19*, CDC (Feb. 16, 2021), https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-

16 during-covid19.html (warning against traveling, especially for at-risk persons); People with Certain

17 Medical Conditions, CDC (Feb. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

18 precautions/people-with-medical-conditions.html (stating that "[a]dults of any age with certain

19 underlying medical conditions are at increased risk for severe illness from the virus that cause

20 COVID-19").

21     If Mr. Loiselle were to travel across the country from Massachusetts to California in his

22 current condition, and contracted COVID-19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dr. Baird Decl.

25 ¶ 6; Loiselle Decl. ¶ 10. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dr. Baird Decl. ¶ 6; Loiselle Decl. ¶ 11. In other words,

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ▮▮▮▮ which has been life-altering in a positive way for Mr. Loiselle and his family. *See* Loiselle Decl. ¶ 12-13.

### C. Meet-and-Confer Efforts

Counsel for Mr. Loiselle requested that, based on his unique medical circumstances, the United States and Mr. Kail consent to testimony by two-way videoconference. While the Government was willing to agree, Mr. Kail declined. *See* Patchen Decl., Exhs. B, C. Counsel for Mr. Loiselle later requested consent to a Rule 15 deposition in lieu of trial testimony. Neither the Government nor Mr. Kail responded to that request prior to the filing of this motion. *See* Patchen Decl., Exh. D.

## III. Legal Standard

This Court has the discretion to "quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2); *see also United States v. Berberian*, 767 F.2d 1324 (9th Cir. 1985). Rule 17(c)(2) "requires a discretionary, case-by-case inquiry" and the "factors the district court must consider under Rule 17(c)(2)—unreasonableness and oppressiveness—cannot sensibly be converted into a mechanical rule enabling an escape from case-by-case judgment." *United States v. Bergeson*, 425 F.3d 1221, 1225 (9th Cir. 2005) (upholding a district court order quashing a subpoena for testimony pursuant to Fed. R. Crim. P. 17(c)(2)).

The Confrontation Clause of the Sixth Amendment provides a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. As construed, the Confrontation Clause guarantees the defendant a right to "physical, face-to-face confrontation at trial." *Maryland v. Craig*, 497 U.S. 836, 850 (1990). The right to face-to-face confrontation, however, is not absolute. *Id.* at 844, 849 (noting that while "the Confrontation Clause reflects a preference for face-to-face confrontation," defendants do not have an "absolute right to a face-to-face meeting with witnesses against them at trial"). Denial of such confrontation is appropriation where it is necessary to further an important public policy, and the reliability of the testimony is otherwise assured. *Id.* at 850.

IV. **Argument**

Mr. Loiselle is willing testify at trial. But in-person, trial testimony in San Jose subjects Mr. Loiselle to potentially grave medical risks in light of the COVID-19 pandemic, his severe pre-existing health condition, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ His medical condition amply satisfies the important public policy standard. And Mr. Loiselle is willing to be deposed or to testify via two-way video conference. Either option meets the standard of maintaining the reliability of Mr. Loiselle's testimony. The Subpoena should be thus modified.

**A. Protecting Mr. Loiselle's Health Is an Important Public Policy**

Mr. Loiselle life, health, and well-being would be jeopardized if he were forced to testify in-person at trial. And this is not a generalized fear of COVID-19, but a specific threat based on Mr. Loiselle's unique health status and on-going medical treatment.

There can scarcely be a more important public policy than ensuring the health and safety of the witnesses who testify at trial. *See, e.g., United States v. Crittenden*, No. 4:20-CR-7 (CDL), 2020 WL 4917733 (M.D. Ga. Aug. 21, 2020) (holding that the mask requirement does not violate a defendant's rights under the Confrontation Clause because it is necessary to further an important public policy: ensuring the safety of everyone in the courtroom in the midst of a unique global pandemic); *United States v. Clemons*, No. CR RDB-19-0438, 2020 WL 6485087 (D. Md. Nov. 4, 2020) (same); *see also United States v. de Jesus-Casteneda*, 705 F.3d 1117, 1120 (9th Cir. 2013) (holding that confidential informant's disguise in the form of a wig and mustache at trial was necessary to further an important state interest, namely a witness's safety).

Indeed, the Ninth Circuit has indicated that a witness's medical condition can satisfy the important public policy standard. *See United States v. Carter*, 907 F.3d 1199, 1208-09 (9th Cir. 2018) ("We also realize that there may be some cases in which it is truly necessary to forgo physical confrontation at trial due to a witness's medical condition.") (*citing Horn v. Quarterman*, 508 F.3d 306, 310, 320 (5th Cir. 2007) (finding Craig's "necessity-based exception" satisfied on habeas review when the witness was "terminally ill with cancer and being treated in [another state]")); *see also United States v. Sapse*, 2012 WL 5334630, *2-3 (D. Nev. 2012) (extreme health-related issues prevented witnesses from traveling to testify).

Here, travel across the country—from Boston to San Jose—poses extreme and unacceptable health risks to Mr. Loiselle. His doctor has indicated that he should not be forced to do so. *See* Dr. Baird Decl., ¶ 7. Excusing Mr. Loiselle from in-person testimony at trial is, therefore, necessary to serve an important public policy.

### B. Mr. Loiselle's Proposed Alternatives Satisfy the Reliability Requirement

Mr. Loiselle is willing to sit for an in-person deposition in Boston. As an alternative, he is willing to testify via two-way videoconference. Either satisfies the second *Craig* element.

<u>First</u>, the Ninth Circuit has established a preference for in-person confrontation via deposition over remote, but at-trial, testimony. *United States v. Harris*, No. 19-10006, 2020 WL 7706625 (9th Cir. Dec. 29, 2020) (holding that *United States v. Carter* establishes a preference for in-person depositions over two-way videoconference because the former preserves the "right to physical face-to-face confrontation").

Undoubtedly, Mr. Loiselle's establishing of the first element of the *Craig* test satisfies Rule 15's "exceptional circumstances" and "interest[s] of justice" standard. Fed. R. Crim. P. 15(a)(1). And this Court "retains broad discretion in granting a Rule 15(a) motion, and considers the particular circumstances of each case to determine whether the exceptional circumstances requirement has been satisfied." *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998) (internal citation and quotation marks omitted).

Thus, Mr. Loiselle proposes an in-person deposition to be held in Boston—precisely the remedy the Ninth Circuit has endorsed to maintain confrontation. *See Carter*, 907 F.3d at 1209 ("Although live, in-person testimony would be preferable to out-of-court testimony, a deposition would have at least preserved Carter's right to physical confrontation."). Counsel for Mr. Loiselle is happy to facilitate arrangements so that all necessary parties may be present at the deposition in a socially distant and safe manner. Indeed, because Mr. Kail is the only person with the right to physical confrontation, only he need be present—counsel for the United States, Mr. Kail, and Mr. Loiselle could appear at the deposition via two-way video—reducing the travel burden, potential schedule conflicts, and impact on pre-trial preparations. *See Carter*, 907 F.3d at 1209 ("Indeed, *Craig* itself notes that the 'denial of face-to-face confrontation would be unnecessary' if the witness

<19>
<20>
<21>
<22>
<23>

could testify elsewhere 'with the defendant present.'"); *United States v. Yates*, 438 F.3d 1307, (11th Cir. 2006) (noting, repeatedly, that what matters is the witness and defendant being "in the same room."). The deposition would be videotaped and admissible portions—an issue outside the purview of this motion—could be played before the jury.

Therefore, in the interests of justice, the Court should modify the Subpoena to order Mr. Loiselle to testify via deposition near his home in Boston, Massachusetts at a date on or before the start of trial on April 7, 2021.

<u>Second</u>, should Mr. Kail object to such a deposition, then the Court should order testimony via two-way videoconference. Although witnesses availability for deposition would ordinarily render videoconference testimony unnecessary, that changes when the Defendant opposes the option that would preserve physical, in-person confrontation. At that point, the Court should then opt for the alternative that protects the "at trial" aspect of the Confrontation right. Two-way video conference (e.g., testimony by Zoom) satisfies that standard. *See Craig*, 497 U.S. at 851 ("Although we are mindful of the many subtle effects face-to-face confrontation may have on an adversary criminal proceeding, the presence of these other elements of confrontation—oath, cross-examination, and observation of the witness' demeanor—adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony.").

Counsel for Mr. Loiselle understands that the Court has the ability to conduct live two-way video conferences via Zoom. As such, Mr. Loiselle proposes testifying at trial via Zoom. In order to preserve as many aspects of confrontation as possible:

   a. Mr. Loiselle's testimony would be elicited as if he were present in the courtroom in San Jose;

   b. Mr. Loiselle would take an oath or affirmation administered by the Court's Courtroom Deputy in San Jose;

   c. During his testimony, Mr. Loiselle could observe and hear Defendant and counsel;

   d. During his testimony, Defendant could observe Mr. Loiselle;

   e. The jury could observe Mr. Loiselle's demeanor during direct and cross examination; and

   f. Defense counsel would have a full and fair opportunity to cross examine Mr. Loiselle.

1    And, unlike in a courtroom, Defendant and the jury would be able to see Mr. Loiselle's face clearly
2    as the need for a mask would be obviated.  Mr. Loiselle is also amenable to any additional procedural
3    safeguards the Court imposes.

4    **C.  If No Alternative to In-Person Testimony Exists, The Subpoena Should Be Quashed.**

5    Preserving Mr. Loiselle's health and well-being is an important interest.  Traveling to testify
6    poses a dangerous and serious health risk to Mr. Loiselle.  Mr. Loiselle has proposed alternatives
7    that would permit testimony in a safe manner.  But if those alternatives are not adopted by the Court,
8    then the Court should quash the Subpoena in its entirety.  It is unreasonable and oppressive to require
9    Mr. Loiselle, a non-party, to travel thousands of miles during a pandemic ■■■■■■■■■
10   ■■■■■■■■■■■■■■■ jeopardizing both his current health and the efficacy of a treatment
11   regime that has allowed him to resume a semi-normal life for the last fifteen years.  Because the risk
12   of travelling for Mr. Loiselle is simply too great to require personal attendance at trial, the Court
13   should—as a last resort—quash the Subpoena in its entirety.

14   **V.   CONCLUSION**

15   The Court should modify the Subpoena to permit Mr. Loiselle to testify via deposition near
16   his residence or via live two-way video conference at trial or, in the alternative, the Court should
17   quash the Subpoena in its entirety.

18
19   Dated:  March 16, 2021

20                                               By:  */s/ Jonathan A. Patchen*_____
                                                      JONATHAN A. PATCHEN
21
22                                               **WILLKIE FARR & GALLAGHER LLP**

23                                               Jonathan A. Patchen (CA 237346)
                                                 One Front Street
24                                               San Francisco, CA 94111
                                                 Telephone: (415) 858-7594
25                                               Fax: (415) 858-7599
                                                 jpatchen@willkie.com
26
                                                 *Attorney for Vance Loiselle*
27
28

# **CERTIFICATE OF SERVICE**

I, Jonathan A. Patchen, hereby certify that a true copy of the foregoing NOTICE OF MOTION AND MOTION OF NON-PARTY VANCE LOISELLE TO MODIFY OR QUASH THE TRIAL SUBPOENA TO VANCE LOISELLE was filed manually via on March 16, 2021 at the Clerk's Office Entrance, 2nd Floor, 280 South 1st Street, San Jose, California 95113 and served on all counsel of record via electronic mail at the following addresses:

Colin Christopher Sampson
Daniel Kaleba
Erin A. Cornell
United States Attorney's Office
Email: colin.sampson@usdoj.gov
Email: daniel.kaleba@usdoj.gov
Email: erin.cornell@usdoj.gov

Julia Mezhinsky Jayne
Ashley Riser
Jayne Law Group
Email: julia@jaynelawgroup.com
Email: ashley@jaynelawgroup.com

                                                        By: */s/ Jonathan A. Patchen*
                                                              JONATHAN A. PATCHEN