JULIA M. JAYNE, State Bar No. 202753
ASHLEY RISER, State Bar No. 320538
Jayne Law Group, P.C.
483 9th Street, Suite 200
Oakland, CA 94607
Telephone: 415-623-3600
Facsimile: 415-623-3605
Email: julia@jaynelawgroup.com

Attorneys for Defendant MICHAEL KAIL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>MICHAEL KAIL,<br><br>  Defendant. | Case No. 18 CR 172 BLF<br><br>**DEFENDANT MICHAEL KAIL'S NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL**<br><br>Date:  April 23, 2021<br>Dept:  Courtroom 1, 5th Floor<br>Judge: Hon. Beth Labson Freeman |

## NOTICE OF MOTIONS AND MOTIONS

**PLEASE TAKE NOTICE** that on April 23, 2021, or as soon thereafter as this motion may be heard, in the courtroom of the Honorable Beth Labson Freeman, United States District Court Judge, DEFENDANT Michael Kail, by and through counsel, will and does move this Court for an entry of a judgment of acquittal on Counts One through Twenty-Nine of the Indictment. Mr. Kail brings this motion pursuant to Fed. R. Crim. P. 29(a) and the Fifth and Sixth Amendments to the United States Constitution.

The motion for judgment of acquittal is based on the grounds that the actual testimony and records presented to the jury would not permit any rational trier of fact to conclude that Mr. Kail is guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Barker*, 967 F.2d 1274, 1276 (9th Cir. 1991).

This motion is based upon the below memorandum of points and authorities, the files and records

1  in the above-entitled case, and any and all matters that may be brought to the Court's attention prior to or
2  during the hearing on this motion.

DATED: April 22, 2021                    Respectfully submitted,

                                         JAYNE LAW GROUP, P.C.


                                         By: _____
                                         JULIA MEZHINSKY JAYNE
                                         ASHLEY RISER
                                         Attorneys for Defendant
                                         MICHAEL KAIL

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The government did not introduce evidence establishing the material elements of the charged offenses, wire fraud, in violation of 18 U.S.C. § 1343 and 1346, mail fraud, in violation of 18 U.S.C. § 1343 and 1346, and money laundering, in violation of 18 U.S.C. § 1957. Because of the failure to introduce such evidence, the Court should grant a judgment of acquittal.

## RULE 29 LEGAL STANDARDS

Rule 29 mandates acquittal where evidence is insufficient to sustain a conviction. A motion for judgment of acquittal may be made after the government's case-in-chief, before submission to the jury, or after discharge of the jury. Fed. R. Crim. P. 29. The standard for determining whether a motion pursuant to Rule 29 should be granted is whether the evidence, viewed in the light most favorable to the government, would permit any rational trier of fact to conclude that the defendant is guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Although circumstantial evidence alone can support a conviction, there are times that it amounts to only reasonable speculation and not to sufficient evidence." *Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir. 2008). *See also O'Laughlin v. O'Brien*, 568 F.3d 287, 301 (1st Cir. 2009) (noting that there are "some limits" to the probative value of circumstantial evidence, and that a reviewing court should not give credence to evidentiary interpretations that are "unreasonable, insupportable, or overly speculative."). It is well-established that "speculation and conjecture cannot take the place of reasonable inferences and evidence." *Juan v. Allen*, 408 F.3d 1262, 1279 (9th Cir. 2005).

Where there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt on each and every element of the charged offense, a judgment of acquittal is required. *Id*. The law is clear that when the evidence equally supports an inference of **innocence and of guilt, a reasonable jury must necessarily entertain a reasonable doubt**. *United States v. Delgado*, 357 F.3d 1061, 1068 (9th Cir. 2004) (citations omitted); *see also United States v. Glenn*, 312 F.3d 58, 70 (2nd Cir. 2002) ("if the evidence viewed in the light most favorable to the prosecution gives 'equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' then 'a reasonable jury must necessarily entertain a reasonable doubt'") (citation omitted). The application of this principle is

absolutely critical in this case because the insufficient testimony of the government's witnesses equally supports a theory of innocence and dispels any rational inferences of criminal conduct that could be drawn from the thin evidence adduced during the prosecution's case.

## ARGUMENT

### I. MR. KAIL IS ENTITLED TO A JUDGEMENT OF ACQUITTAL ON THE WIRE AND MAIL FRAUD COUNTS.

The government attempted to establish Mr. Kail's guilt for wire fraud under two theories: (1) engaging in a scheme to commit honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, (2) and engaging in a scheme to commit wire fraud involving the loss of money or property, in violation of §1346. The government also used this identical set of theories in efforts to establish guilt for mail fraud, in violation of 18 U.S.C. § 1341, and honest services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346. However, the government did not present evidence beyond a reasonable doubt to prove the material elements of each charged offense. Thus, this Court should grant Mr. Kail an acquittal on Counts One through Twenty-Two.

#### A. The government failed to prove honest services fraud because there is no evidence of a quid pro quo scheme.

During their opening statement, the government stated that the evidence would show that third-party companies provided Mr. Kail with compensation in exchange for Netflix contracts. However, the government has not presented evidence proving the existence of such an exchange. In fact, some of the government's own witnesses have explicitly stated in their testimony that such a scheme did not exist. For example, on cross-examination, Michael Rossi, who worked for Platfora, testified that he did not think that Platfora was guaranteed a contract with Netflix, even though Mr. Kail was an advisor. RT: Vol. 4, p. 751. He further testified that getting a contract with Netflix would require Platfora to work for it. *Id*.

Similarly, Varma Kunaparaju, with VistaraIT, testified, on cross-examination, that he did not believe that giving Mr. Kail "anything" would result in a contract with Netflix. He went on, testifying that he believed he had to work hard for Netflix's business, provide a valuable service, and that ultimately, his team provided a valuable service to Netflix. RT: Vol. 4, p. 882.

These two government witnesses, along with countless other government witnesses, testified that they did not expect a benefit by having Mr. Kail as an advisor. Instead, they expected to work for the

contract, demonstrate value, and deliver a good product for Netflix's specific needs. The exchange of valuable services for contracts with businesses using those services is not a quid pro quo - which is required under § 1346 - but instead, it is an example of savvy business strategies intended and done in order to better Netflix. Without the existence of a quid pro quo, the honest services mail and wire fraud charges necessarily fail - there is no evidence that Mr. Kail accepted kickbacks or bribes in exchange for granting contracts.

### B. The government failed to prove a scheme to defraud Netflix of money or property.

The government also failed to prove wire or mail fraud under their second theory. Under that theory, the government needed to prove beyond a reasonable doubt that Mr. Kail engaged in a scheme to commit "wire (or mail) fraud ... involving the loss of money or property." Instruction No. 46: Jury Unanimity of Theory. However, the government did not prove the existence of a scheme involving the loss of money or property.

#### 1. The government did not present evidence that Mr. Kail devised a scheme to defraud Netflix of money or property.

Both mail and wire fraud require the government to prove that there was a scheme to defraud the victim of money or property. *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) ("the wire fraud statute thus prohibits only deceptive schemes to deprive the victim of money or property") (internal citations and quotations omitted). A property interest is an economic interest, and "property," as used in the mail and wire fraud instructions, refers to a financial loss and not a contractual interest or intangible interest. Thus, to prevail under this pecuniary loss theory, the government must prove beyond a reasonable doubt that the scheme's creator intended economic harm to the victim. The government has not done so.

In *United States v. Kelly*, the Government charged two defendants with wire theft, in violation of 18 U.S.C. $ 1343, and federal program fraud, in violation of § 666(a)(1)(A). The scheme in *Kelly* involved the unannounced realignment of several toll lanes leading to the George Washington Bridge, an entryway into Manhattan administered by the Port Authority of New York and New Jersey. Two of the defendants went to trial and were found guilty of all offenses, and later, the Third Circuit Court of Appeals affirmed the convictions.

However, the Supreme Court reversed, reasoning that the government needs to prove *property*

fraud. In other words, schemes involving non-tangible interests, such as exercises of regulatory power, as was the case in *Kelly*, are not schemes involving property. *Kelly*, 140 S. Ct. 1571 (2020). In this case, the government similarly failed to show that Mr. Kail engaged in property fraud - they never showed that he devised or participated in a scheme to defraud Netflix of money or property.

The government presented evidence that Mr. Kail contracted on Netflix's behalf with third-party vendors to provide Netflix with services. Yet, the government did not present evidence that the contracts caused Netflix loss of money or property. Much like the government did in *Kelly*, the government in this case improperly relies on an improper definition of "property."

Without the economic loss, the government cannot establish Mr. Kail's intent to defraud Netflix. More importantly, the lack of loss is consistent with Mr. Kail's lack of intent to defraud - after all, if there's no loss during an alleged multi-year fraud scheme, this suggests that Mr. Kail did not act with the specific intent to deprive Netflix of property or money. The absence of evidence is particularly important because it supports an inference of innocence and guilt. As this Court knows, when evidence supports such an inference, the jury must entertain reasonable doubt. Because of this implication, the government failed to present evidence beyond a reasonable doubt in support of Mr. Kail's guilt for the charged offenses. *See e.g.*, *United States v. Delgado*, 357 F.3d 1061, 1068 (9th Cir. 2004) (citations omitted); *see also United States v. Glenn*, 312 F.3d 58, 70 (2nd Cir. 2002) ("if the evidence viewed in the light most favorable to the prosecution gives 'equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' then 'a reasonable jury must necessarily entertain a reasonable doubt'") (citation omitted).

**2.    A right to control the allocation of contracts is not a money or property interest.**

As discussed above, the government did not present evidence that Mr. Kail devised a scheme to defraud Netflix of money or property. In part, this failure is attributable to the crux of the government's claims against Mr. Kail: namely, that Mr. Kail devised a scheme to exchange Netflix contracts with compensation. And, while the government makes vague, generalized claims about money and property loss, they do not allege or point to any actual lost money or property. Essentially, the government's argument is that Mr. Kail deprived Netflix of control over its money. This type of loss, assuming it even

existed, is not a protected property interest and therefore, cannot support a conviction for a property fraud offense.

For example, in *United States v. Zauber*, 857 F.2d 137 (3rd Cir. 1988), the court held that defendants can't scheme to defraud an entity when that same entity gave the defendants the authority to exercise said control and authority of the entity's money or property. *Id*. at 147. In Zauber, the defendants engaged in a kickback scheme when they switched from one administrator company to another company that paid a substantially lower return on investment. The government argued that the scheme deprived the entity over control over the paid monies and thus, committed money and property fraud. *Id*. The Third Circuit rejected this argument, reasoning that the "right to conduct business free of false, fictitious and fraudulent information" is an intangible right that does not supply the "economic benefit ground" required to sustain a money-or-property fraud conviction. *Id*. at 143. Much like the case at bar, Mr. Kail had the authority to negotiate and sign contracts. This explicit permission to control Netflix's assets means that he couldn't defraud Netflix of money or property.

Further, in *Zauber*, the indictment alleged that the defendants conspired to defraud the entity fund of "money and property and of the right to honest, faithful, prudent and diligent services by its employees." *Id*. The Court held that - despite this language - there was no allegation in the indictment of "*an actual* money or property loss to the fund itself." *Id*. (emphasis added). Similarly, here, the Indictment generally alleges a loss of "money and property" but does not allege that Netflix actually lost any money or property. As a result, the Indictment itself is deficient in alleging a theory of pecuniary harm; the only theory "actually" articulated is honest services fraud.

II. **MR. KAIL IS ENTITLED TO A JUDGMENT OF ACQUITTAL ON THE MONEY LAUNDERING COUNTS BECAUSE THE GOVERNMENT DID NOT PRESENT EVIDENCE THAT MR. KAIL KNOWINGLY ENGAGED IN A MONETARY TRANSACTION INVOLVING CRIMINALLY DERIVED PROPERTY.**

The government did not prove each material element of money laundering in violation of 18 U.S.C. § 1957. *See generally United States v. Messer*, 197 F.3d 330, 341 (9th Cir. 1999) (listing elements of money laundering: "(1) knowingly engaged in a financial transaction; (2) knew that the transaction involved criminal property; (3) the property's value exceeded $10,000; and (4) the property was in fact derived from a specified unlawful activity.") In particular, the government failed to prove that Mr. Kail

knowingly engaged in a monetary transaction involving criminally derived proceeds for each charged money laundering offense. Here, the government alleged that Mr. Kail transferred funds between bank accounts and that these funds were the proceeds of the charged wire and mail fraud counts. Indictment, p. 7. While the government elicited testimony regarding Unix Mercenary, LLC, that testimony did not establish that Mr. Kail knew that the transferred funds were criminally derived proceeds.

The government failed to present evidence that showed beyond a reasonable doubt that Mr. Kail knew the funds were the result of criminal conduct. As several witnesses testified, compensation to advisers is a normal and standard practice in Silicon Valley. Because of his belief that the advisor agreements were legitimate, he didn't have the requisite intent to defraud. In turn, this lack of specific intent meant that Mr. Kail did not think any monies received were proceeds of criminal activity. Stated another way, Mr. Kail did not know that the monies were criminal proceeds because he didn't believe he was engaging in misconduct, let alone a crime. Thus, he had no way of knowingly engaging in a transaction involving criminal proceeds.

## CONCLUSION

"[A]n essential of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia, supra*, 443 U.S. at 316. The evidence presented by the government cannot establish proof of guilt beyond a reasonable doubt and therefore, a motion for acquittal is necessary. Because the government's evidence is insufficient to establish proof beyond a reasonable doubt of the charged offenses, Mr. Kail respectfully request that the Court grant his Rule 29 motion.

Dated: April 22, 2021

Respectfully submitted,

Julia Jayne
Ashley Riser
Attorneys for MICHAEL KAIL