**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

MICHAEL KAIL,

        Defendant.

Case No. 18-cr-00172-BLF-1

**ORDER GRANTING GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE FORMER DEPOSITION TESTIMONY PURSUANT TO FED. R. EVID. 804**

On April 12, 2021, the Government moved to introduce the deposition testimony of Benjamin Werther at trial pursuant to Federal Rule of Evidence 804. Mot., ECF 200. The Government previously noticed its intent to introduce Werther's testimony on March 29, 2021. Notice, ECF 178. Defendant Michael Kail filed an opposition to the Government's Notice. Opp., ECF 175. The Court heard oral arguments on the motion on April 13, 2021, at which time it made factual findings and granted the Government's motion on the record. The Court now memorializes its findings and holding.

### A. BACKGROUND

The Government seeks to introduce the civil deposition testimony of Benjamin Werther at trial. Mot. Werther, the Founder and former Chief Executive Officer of Platfora, Inc. ("Platfora"), provided sworn, transcribed, and videotaped deposition testimony over two days, on April 29 and 30, 2015. *See* Mot., Exh. 1 ("Werther Deposition"). Platfora is a Silicon Valley-based technology company. Werther provided deposition testimony after Netflix, Inc. ("Netflix") sued Defendant and Unix Mercenary, LLC ("Unix Mercenary") in November 2014 for breach of fiduciary duty and duty of loyalty, conversion, fraudulent concealment, unjust enrichment, unfair competition, constructive fraud, and fraud. *Netflix, Inc. v. Michael Kail and Unix Mercenary LLC*, Superior Court of the State of California, County of Santa Clara, Case No. 114-cv-273691, ECF 1 ("Civil Complaint"). The

complaint alleges that Defendant was a "trusted, senior-level Netflix employee, whose job responsibilities included negotiating and executing contracts on Netflix's behalf." *Id.* ¶ 1. It further alleges that "third-party companies [paid] Kail 'commissions' on the invoice amounts for products and/or services that Netflix paid to these third party companies" and that "Kail recommended and/or advocated with Netflix that Netflix enter into many of the agreements and contracts with these third parties pursuant to which the third parties later paid commissions to Kail." *Id.* ¶¶ 2, 4. Platfora was not named in the civil complaint.

On December 15, 2014, Netflix requested that Kail answer a set of interrogatories. The interrogatories identified Platfora and requested that Kail describe anything of value "offered to, received by, accepted by, requested by, or expected by" Kail from Platfora. Plaintiff's First Set of Special Interrogatories to Defendant Michael Kail ("December 2014 Interrogatories"), ECF 209, Exh. 1 ¶ 39, Interrogatory No. 2. On February 11, 2015, Kail's counsel sent Netflix a letter that stated in relevant part:

> I write in an attempt to persuade you that the language we propose in the attached is a fair compromise of the last remaining issue in connection with the Protective Order, namely our use of Confidential Information and Material in any parallel criminal proceeding.
>
> If there already is a parallel criminal proceeding (and to date you have declined to tell us if there is one) and/or one develops in the future, we intend to act as Mike Kail's counsel in that proceeding. As such, we must be able to use all of the information in our possession in connection with that representation.

Bird Manella Letter Re: Netflix, Inc. v. Kail, et al., ECF 209, Exh. 2 ("February 2015 Letter").

On April 29-30, 2015, Netflix deposed Werther in San Francisco. Werther Deposition. Scott Goldman, Kail and Unix Mercenary's counsel, appeared telephonically at the deposition. *Id.* at 6. Goldman made objections and asked questions of Werther. *See generally id.*; Mot. at 2. Among other things, Werther testified about Defendant's role in approving a contract between Netflix and Platfora and Defendant's solicitation of a stock-compensated advisory board position with Platfora. Werther Deposition at 73:24-75:10, 149:9-151:22, 155:21-156:20, 158:12-159:9; *see also* Mot. at 4-5.

United States District Court
Northern District of California

1   On April 26, 2018, the Government filed the indictment in the above-captioned criminal

2   case. Indictment, ECF 1. According to the indictment, while Kail was the Vice President of IT

3   Operations at Netflix, he directed Platfora to pay him kickbacks in exchange for the approval of

4   Netflix contracts. *Id*. ¶ 23. Trial commenced on April 9, 2021. ECF 201, 202.

5   Werther, an Australian citizen, is currently located in Australia, which has strict isolation

6   and quarantine restrictions related to COVID-19. Shannon Eagan Declaration ("Eagan Decl."), ECF

7   213 ¶¶ 5, 7. Werther does not intend to return to the United States until Summer 2021. *Id*. ¶ 5. In

8   January 2020, Werther received a subpoena to appear and testify at trial, then set for March 2020.

9   *Id*. ¶ 2. Trial was later continued due to the COVID-19 pandemic. ECF 120. On December 22, 2020,

10  the Government queried Werther's counsel about whether Werther would be available to testify at

11  trial. Eagan Decl. ¶ 4. Werther's counsel informed the Government that Werther was relocated in

12  Australia through July or August 2021. *Id*. ¶ 5. On March 26, 2021, Werther's attorney informed

13  the Government that Mr. Werther was unwilling to travel to the United States for trial—even at the

14  Government's expense. *Id*. ¶¶ 6-7. This decision was predicated in part on Werther's inability to

15  return to Australia, where to his family lives, after trial as a result of Australia's pandemic safety

16  restrictions. *Id*. ¶ 7; Mot. at 2-3.

17  **B. ANALYSIS**

18  Defendant objects to the introduction of Werther's deposition on constitutional and

19  evidentiary grounds. *See* Opp. The Court considers each in turn.

20  **1. Confrontation Clause**

21  The Confrontation Clause of the Sixth Amendment provides that, in criminal cases, the

22  accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI;

23  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009). "A primary interest secured by [the

24  Confrontation Clause] is the right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315–16

25  (1974). However, "the Confrontation Clause guarantees only 'an *opportunity* for effective cross-

26  examination, not cross-examination that is effective in whatever way, and to whatever extent, the

27  defense might wish.'" *United States v. Owens*, 484 U.S. 554, 559 (1988) (emphasis in original)

28

United States District Court
Northern District of California

(quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987)). The Confrontation Clause applies not only to in-court testimony but also to out-of-court statements introduced at trial to prove the truth of the matter asserted, i.e., "testimonial hearsay," regardless of the admissibility of the statements under state laws of evidence. *Crawford v. Washington*, 541 U.S. 36, 50–51 (2004); *Tennessee v. Street*, 471 U.S. 409, 414 (1985) ("The nonhearsay aspect of [the] confession...raises no Confrontation Clause concerns."). "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz*, 557 U.S. at 309 (citing *Crawford*, 541 U.S. at 54). Stated another way, "[t]he prosecution may not offer proof of a prior statement that is testimonial in nature unless (1) the accused has had, will have, or has forfeited the opportunity to 'be confronted with' the witness who made the statement, and (2) the witness is unavailable to testify at trial.'" *United States v. Yida*, 498 F.3d 945, 950 (9th Cir. 2007) (citing *Crawford*, 541 U.S. at 68).

The parties do not dispute that Werther's deposition testimony is testimonial hearsay. Defendant argues that the Government has not demonstrated that Werther is unavailable and that written deposition testimony is a constitutionally inadequate substitute for in-person cross-examination. Opp. at 3-6.

### a. Unavailability

"[A] witness is not 'unavailable' for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724–25 (1968). "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness. As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate." *Ohio v. Roberts*, 448 U.S. 56, 74–75, (1980), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004). "The lengths to which the prosecution must go to produce the

4

witness . . . is a question of reasonableness." *California v. Green*, 399 U.S. 149, 189, n. 22 (1970) (Harlan, J., concurring). "'Good faith' and 'reasonableness' are terms that demand fact-intensive, case-by-case analysis, not rigid rules." *Christian v. Rhode*, 41 F.3d 461, 467 (9th Cir. 1994).

The Court is satisfied that the Government engaged in a good faith effort to produce Werther as a live trial witness. The Government repeatedly attempted to secure Werther's presence at trial. Eagan Decl. ¶¶ 1, 4, 6. These efforts included serving Werther with a trial subpoena prior to the COVID-19 pandemic and offering to finance Werther's flight back to the United States after COVID-19. *Id*. ¶¶ 1, 6. While the Government did not issue a subsequent subpoena for the delayed trial date, any subpoena would be meaningless outside the jurisdiction of the United States. Defendant contends that "the Government has not shown that they attempted to secure Mr. Werther's presence in any meaningful way," Opp. at 4, but this evidence suggests just the opposite. These actions represent a reasonable, good-faith effort to secure Werther's appearance at trial. The Court also highlights that Werther's main objection to attending trial is the COVID-19 pandemic and Australia's stringent quarantine requirements. In the context of these facts, the Government's efforts are wholly reasonable.

### b. Cross Examination

As an initial matter, the Court considers the *form* of deposition testimony the Government seeks to introduce. Defendant contends that written deposition testimony is a constitutionally inadequate substitute for in-person cross-examination. Opp. at 4-6. The Court credits Defendant's concerns. "Underlying [the Sixth Amendment's Confrontation Clause] and the rules of evidence is a preference for live testimony. Live testimony gives the jury (or other trier of fact) the opportunity to observe the demeanor of the witness while testifying." *Yida*, 498 F.3d at 950. The Government, however, appears to be seeking to introduce Werther's video deposition—not his transcribed written deposition. *See* Mot. at 4 ("the testimony is videotaped, and the jury can see and evaluate Mr. Werther's words, speech, and other aspects that reflect upon his credibility similarly to their ability

United States District Court
Northern District of California

to do so in trial."). To the extent that the Government intends to introduce Werther's written deposition testimony, the Court DENIES the Government's motion.

The Court next turns to whether Defendant was provided an opportunity to cross-examine Werther during his civil case deposition. *See Crawford*, 541 U.S. at 59 ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a *prior opportunity* to cross-examine." (emphasis added)). This requirement is derived from the Founding Father's concerns about evidentiary reliability. *Id*. at 61. ("To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner"); *see, e,.g., id*. at 66 ("The Framers would be astounded to learn that *ex parte* testimony could be admitted against a criminal defendant because it was elicited by "neutral" government officers."). In *California v. Green*, the Supreme Court found preliminary hearing testimony admissible based on the existence of procedural protections: the declarant was under oath, the defendant was represented by counsel, there was an opportunity for cross-examination, and the proceeding was held in a setting designed to provide "a judicial record of the hearings." 399 U.S. at 165.

Evidence clearly indicates that Defendant, in line with the Supreme Court's guidance, was provided an opportunity to cross-examine Werther during his civil case deposition. Werther was under oath during the deposition. Werther Deposition at 5. At the deposition, Defendant was represented by counsel, Scott Goldman, who had notice of the deposition and attended telephonically. Werther Deposition at 6. And while in-person attendance of Goldman at the deposition is not a constitutional requirement, the Court nonetheless highlights that there is no reason to believe that Defendant's attorney could not have attended the deposition in person. During the deposition, Defendant had an opportunity to cross-examine Werther and, indeed, took advantage of that opportunity. In light of these facts, the Court is satisfied that Werther's deposition testimony has

been "test[ed] in the crucible of cross-examination" so as to ensure its reliability. *Crawford*, 541 U.S. at 61.

The Court will analyze Defendant's motive to develop and cross-examine Werther's testimony during the deposition when considering the Federal Rules of Evidence, *See Shayota*, No. 15-CR-00264-LHK-1, 2016 WL 6093238, at *10 (N.D. Cal. Oct. 19, 2016), *aff'd sub nom. United States v. Shayota*, 934 F.3d 1049 (9th Cir. 2019), *and aff'd sub nom. United States v. Shayota*, 784 F. App'x 986 (9th Cir. 2019) ("Courts interpreting United States Supreme Court precedent have found that the Confrontation Clause does not require an analysis or consideration of the potential motive or 'need and incentive' to cross-examine.").

### 2.   Hearsay and the Federal Rules of Evidence

Under the Federal Rules of Evidence, hearsay is generally inadmissible. Fed. R. Evid 801, 802. Federal Rule of Evidence 801(c) defines hearsay to include statements that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statements." An exception to this general rule exists when the declarant is unavailable. Fed. R. Evid. 804. Under Rule 804,

> (a) Criteria for Being Unavailable. A declarant is considered to be unavailable as a witness if the declarant:
>
> . . .
>
> (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:
>
> > (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or
> >
> > (B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).
>
> . . .
>
> (b) The Exceptions. The following are not excluded by the rule

against hearsay if the declarant is unavailable as a witness:

> (1) Former Testimony. Testimony that:
>
>> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>>
>> (B) is now offered against a party who had — or, in a civil case, whose predecessor in interest had — an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Under Federal Rule of Evidence 804(b)(1), testimonial hearsay is admissible if (1) the declarant is unavailable at trial; (2) the statements were "given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one"; and (3) the testimony is "offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Civ. P. 804(b)(1). At issue here is whether Werther is unavailable and whether Defendant had an opportunity and similar motive to develop Werther's former testimony.

### c. Unavailability

As the Court discussed at length above, the Government took reasonable means to produce Werther's testimony in person during trial. *See* Fed. R. Evid. 804(a)(5)(A); *Yida*, 498 F.3d at 950 ("Rule 804(b)(1) implements the command of the Sixth Amendment's Confrontation Clause").

### d. Similar Motive

Under Federal Rule of Evidence 804(b)(1)(B), former testimony must be "offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." "Similar motive does not mean identical motive." *United States v. McFall*, 558 F.3d 951, 963 (9th Cir. 2009) (internal marks omitted). The Ninth Circuit has "not developed a bright-line test for determining similarity of motive" because the analysis is "inherently a factual inquiry." *United States v. Duenas*, 691 F.3d 1070, 1086–89 (9th Cir. 2012) (citing *United States v. Salerno*, 505 U.S. 317, 326 (1992)). As part of this factual inquiry, the Ninth Circuit looks to whether the "fundamental objective" of the party against whom the evidence is being offered is the same at both proceedings. *Id.* at 1089 (citing *McFall*, 558 F.3d at 963). "This approach contrasts with the First

United States District Court
Northern District of California

and Second Circuits, which take a more fine-grained approach by looking to whether a party took the same side on the same issue and whether the party had the same degree of interest to prevail at each proceeding." *Shayota*, 2016 WL 6093238, at *15 (internal marks, citations, and alterations omitted).

In *United States v. McFall*, the Ninth Circuit applied the fundamental objective approach and concluded that a prosecutor had similar motive to develop the exculpatory testimony of a witness at a grand jury proceeding and at trial. *McFall*, 558 F.3d at 955. Acknowledging that the government's incentive to develop incriminating testimony before the grand jury was "likely not as intense as it would have been at trial," the Ninth Circuit nevertheless held that the government's "fundamental objective" at each proceeding was "to draw out testimony that would support its theory that McFall conspired with Sawyer to commit extortion—the same motive it possessed at trial." *Id*. at 963. Meanwhile, in *United States v. Duenas*, the Ninth Circuit found that the fundamental objectives of defendants differed between a *Miranda* suppression hearing and trial. 691 F.3d at 1089. The appellate court explained that the objective at the suppression hearing was to "elicit testimony to prove that [the defendant's] statements to [the officer] were involuntary and obtained in violation of Miranda," while the objective at trial was "whether the evidence proved [the defendant's] guilt beyond a reasonable doubt." *Id*. at 1088, 1090. According to the Ninth Circuit, these two fundamental objectives were different.

In *United States v. Shayota*, a court within this district considered whether to introduce civil deposition testimony in a criminal case. In the criminal case, Joseph and Adriana Shayota were charged with conspiracy to traffic in counterfeit goods and conspiracy to commit copyright infringement and to introduce misbranded food into interstate commerce based on a scheme to manufacture and to distribute large quantities of counterfeit 5-Hour Energy. 2016 WL 6093238, at *1. Walid Jamil and Leslie Roman were also charged in the criminal indictment, but later pled guilty. *Id*. In the course of a civil suit filed by 5-Hour Energy for trademark, unfair competition, and unjust competition claims, Jamil and Roman gave deposition testimony. *Id*. at *1-*2. When Jamil and Roman invoked their Fifth Amendment privilege against self-incrimination and refused to testify during the Shayotas' criminal trial, the government offered portions of their civil deposition

9

testimony into evidence under Fed. R. Evid. 804.

The court in *Shayota* admitted the deposition testimony after finding that Defendants had the same "fundamental objective" to develop the testimony of deponents in the civil deposition as they would have had at trial. *See id*. at *14-*18. In support of this conclusion, the court highlighted that during the civil proceedings, the defendants were "potentially liable for millions of dollars of damages." *Id*. at *15. It also found that, because "many of the defendants had filed cross-claims against one another for fraudulent misrepresentation," and because "the deponents did not contest that they were involved in selling counterfeit 5-Hour ENERGY, but instead asserted that they did not know at the time that the 5-Hour ENERGY was counterfeit and that other co-conspirators had represented that their activities had been authorized by the real makers of 5-Hour ENERGY," "each Defendant had a motive to exculpate himself or herself through cross-examination of the deponents." *Id*. at *15-*16. The court concluded that "[i]n both the civil depositions and at criminal trial, the 'fundamental objective' [was] to undermine testimony indicating that each defendant was the mastermind or knowing accomplice of the 5-Hour ENERGY counterfeiting scheme." *Id*.

It is with this context that the Court considers whether Defendant had a similar motive to cross-examine Werther at the civil depositions as they would have at the criminal trial. Applying the fundamental objective approach, the Court finds that he did. In particular, the Court finds that at both the Werther deposition and at criminal trial, Defendant's fundamental objective would be to undermine allegations that Defendant's dealings with Platfora defrauded Netflix in the course of his role as Vice President of IT Operations.

As a starting point, the Court credits Defendant's concern that criminal and civil proceedings may implicate different motives. But this distinction is not dispositive, *see, e.g., Shayota*, 2016 WL 6093238, at *19, and any divergence in the intensity of Defendant's motive was blunted by the fact that Defendant was consciously aware of the threat of criminal proceedings during the Werther deposition. While the criminal indictment against Defendant was not yet filed at the time of the deposition, Defendant's counsel clearly contemplated the existence of a potential "parallel criminal proceeding" and intended to represent him in any such proceeding. February 2015 Letter. Counsel concurrently informed Netflix that it intended to use "all of the information in our possession in

1   connection with [Kail's criminal] representation." *Id*. The Court further highlights that while the

2   civil complaint does not specifically identify Platfora as a relevant entity in the alleged scheme,

3   Defendant was aware of Platfora's import shortly after the civil complaint was filed. Just a month

4   after Netflix filed its civil suit, the company sent Defendant a set of special interrogatories that

5   identified Platfora and requested that Kail describe anything of value "offered to, received by,

6   accepted by, requested by, or expected by" Kail from Platfora. December 2014 Interrogatories ¶ 39,

7   Interrogatory No. 2.

8   As in *Shayota*, the conduct underlying the criminal and civil complaints against Defendant

9   largely overlaps. The civil complaint by Netflix that led to the Werther deposition asserts claims

10   against Defendant for breach of fiduciary duty and duty of loyalty, conversion, fraudulent

11   concealment, unjust enrichment, unfair competition, constructive fraud, and fraud. *See generally*

12   Civil Complaint. Those claims share a significantly similar factual underpinning to the allegations

13   in this criminal proceeding. In the course of the civil deposition, Werther testified about Defendant's

14   role in approving a contract between Netflix and Platfora and Defendant's solicitation of a stock-

15   compensated advisory board position with Platfora. Werther Deposition at 73:24-75:10, 149:9-

16   151:22, 155:21-156:20, 158:12-159:9. Defendant would have been motivated to minimize any

17   testimony from Werther that suggested that Defendant received the Platfora advisory board position

18   in exchange for signing the Platfora contract on behalf of Netflix.

19   Defendant would have a similar motive to cross-examine Werther at trial. The criminal

20   indictment charges Defendant with wire fraud, mail fraud, and money laundering based on a scheme

21   to defraud Netflix. *See generally* Indictment. These charges generally allege that Defendant

22   knowingly and intentionally devised a scheme to defraud Netflix, wherein Defendant directed

23   various third-party companies to pay him bribes or kickbacks in exchange for the approval of

24   contracts with Netflix. *See id*. As in Werther's deposition, Defendant would have been motivated to

25   develop testimony from Werther that suggested the Platfora contract provided value to Netflix and

26   was not signed by Defendant to secure an advisory board position.

27   The Court further finds that Werther's deposition testimony bears other indicia of reliability.

28   In particular, Werther's deposition testimony is corroborated by other witness testimony and

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1  evidence. Fed. R. Evid. 804(b)(1) does not explicitly *require* a showing of reliability beyond the

2  opportunity to develop former testimony via direct and cross examination. Nonetheless, the Federal

3  Rules of Evidence's prohibition against hearsay is generally concerned with the reliability of

4  evidence. *See, e.g*., Notes of Advisory Committee on Proposed Rules, Fed. R. Evid. 804 ("The

5  Court's Rule also proposed to expand the hearsay limitation from its present federal limitation to

6  include statements subjecting the declarant to criminal liability and statements tending to make him

7  an object of hatred, ridicule, or disgrace. The Committee eliminated the latter category from the

8  subdivision as lacking sufficient guarantees of reliability."); *cf. Crawford*, 541 U.S. at 61 ("the

9  [Confrontation] Clause's ultimate goal is to ensure reliability of evidence").

\*\*\*

10

11       For the foregoing reasons, the Court GRANTS Government's Motion *in Limine* to introduce

12  Werther's deposition testimony.

13

14       **IT IS SO ORDERED.**

15

16  Dated: April 26, 2021

                                BETH LABSON FREEMAN

17                                  United States District Judge

18

19

20

21

22

23

24

25

26

27

28