JULIA M. JAYNE, State Bar No. 202753
Jayne Law Group, P.C.
803 Hearst Ave.
Berkeley, CA 94710
Telephone: 415-623-3600
Facsimile: 415-623-3605
julia@jaynelawgroup.com

Attorney for Defendant MICHAEL KAIL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL KAIL,<br><br>Defendant. | Case No. 18 CR 172 BLF<br><br>**DEFENDANT MICHAEL KAIL'S OPPOSITION TO UNITED STATES' APPLICATION FOR A PRELIMINARY ORDER OF FORFEITURE**<br><br>Dept:       Courtroom 3, 5th Floor<br>Judge:     Hon. Beth Labson Freeman |

**INTRODUCTION**

The government's application for a preliminary order of forfeiture is inconsistent with the indictment and the jury verdict in this case. In total, the government may only forfeit substitute assets totaling $70,000 from the real property located in Los Gatos, but it may not forfeit shares in Sumologic and Netskope. The forfeiture of this latter property was never decided by the jury and thus, was never proven to be involved in the counts of conviction.

The government sought forfeiture of property at trial and obtained a jury verdict as to the Los Gatos residence. As discussed in greater detail below, forfeiture of the *entire* property, which was purchased in 2013 for $2,175,000 -- when the jury found that $70,000 was laundered funds – would constitute an excessive fine.

MICHAEL KAIL'S OPPOSITION TO GOVERNMENT'S APPLICATION FOR PRELIM. ORDER FORFEITURE

1

# ARGUMENT

## A. The Forfeiture of Stock Options Was Not Determined by the Jury

Pursuant to Fed. R. Crim. P. 32.2(b)(5), in any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, the defendant may elect to have a jury decide the forfeitability of specific property. The jury makes this determination through a special verdict form. *Id.* That occurred in this case and the jury only made a determination as to Mr. Kail's Los Gatos residence.

The jury never considered, nor was it asked to consider, Mr. Kail's specific property consisting of stock options in Sumologic and Netskope. Nor did the indictment specify these stock options as forfeitable property. Therefore, the government may not seek to forfeit what are now publicly and privately held stocks, respectively. *See United States v. Afriyie*, 929 F.3d 63, 72 (2nd Cir. 2019) ("The jury then received a special verdict form which required it to make specific findings as to the funds in the savings and brokerage accounts and whether the money in those accounts constituted proceeds directly or indirectly obtained as a result of the convictions…[and] jury had to indicate whether the full amount of funds, or some lesser portion, was forfeitable.").

The stock holdings are unequivocally "property" and not a "money judgment." 21 U.S.C. § 853(a)(1). Like other forms of property, in order to have value, the item must be sold for cash. To seek the forfeiture of real or tangible/intangible personal property, the government would have had to present the issue to the jury. *Id.* As it did not, it abandoned any claims to the stock holdings. *See In re Dibiase*, 270 B.R. 673 (W.D. Tx. 2001) (stock options, even unvested, constitute a contingent interest in "property subject to consideration along with other property capable of equitable distribution by a court"); 26 U.S.C. § 83(b) (referring to stock options as "property").

Nor can the government forfeit "substitute property" (i.e., cash) in this instance because the statute provides for forfeiture of substitute assets only when acts *of the defendant* have caused property which constitutes or is derived from proceeds traceable to the offense of conviction to be unavailable. 21 U.S.C. § 853(p). Here, there is no evidence of that Mr. Kail caused the property to be unavailable, as the property always took the form of stock (first, options, then, shares).

In sum, because Mr. Kail requested a jury trial as to forfeiture, the only property subject to a

MICHAEL KAIL'S OPPOSITION TO GOVERNMENT'S APPLICATION FOR PRELIM. ORDER FORFEITURE

2

forfeiture analysis is the Los Gatos residence.

**B. The Stock Options Were Exercised After Mr. Kail Left Netflix**

Mr. Kail received two stock option grants of Sumologic, in 2012 and 2013. He exercised all 50,000 options in August 2015, a year after he left Netflix, by paying $33,200. Those shares remain unliquidated and are held in a joint spousal investment account.

Mr. Kail received a grant of 26,500 Netskope stock options in March 2013 and the later split resulted in 106,000 options. Mr. Kail exercised those options in 2015, also after he left Netflix, by paying $8798. Netskope is a privately held company and it is counsel's understanding that Mr. Kail may not sell more than $100,000 of Netskope stock on the secondary market, nor has he attempted to do so.

Mr. Kail used his own legitimately-earned money to exercise the options in both Sumologic and Netskope. As such, the government cannot demonstrate (even though it is a jury decision) a requisite nexus between the counts of conviction and the post-Netflix acquisition of the shares.

When granted, the stock options did not have a readily ascertainable fair market value. In particular, the value of the privately-held Netskope shares remain unknown. For example, though Mr. Kail exercised his shares in Docurated, when the company was acquired, he received *nothing* and lost the money he spent on the exercise. In other words, the stock holding is personal property with speculative and unknown value, the existence of which was triggered after Mr. Kail no longer worked for Netflix.

**C. The Stock Options Were Provided in Exchange for Mr. Kail's Services**

As acknowledged by the government in its Application, the Sumologic and Netskope shares were given to Mr. Kail as compensation for his advisory services. Gov. App. At p. 5. There was no dispute that Mr. Kail worked as an advisor for Sumologic and a consultant for Netskope, putting in considerable time and effort. *United States v. Aunspaugh*, 792 F.3d 1302, 1309 (11th Cir. 2015) (payments to defendant that are compensation for actual work performed on a project do not constitute kickbacks). In fact, he worked for Netskope *before* they had a contract with Netflix and *after* his employment at Netflix. Thus, the government would not be able to disentangle these earnings from the time of the Netflix contract.

Similarly, Mr. Kail continued advising Sumologic after he no longer worked at Netflix. Once again, this demonstrates the stock options were given in exchange for his work independent of Netflix.

In sum, there is no basis to forfeit property that was earned for work performed.

### D.  Forfeiting the Entire House Would Violate the Excessive Fines Clause

Mr. Kail may challenge the forfeiture on the grounds that that it is excessive. Section 983(g) provides that regardless of the nature of the relationship between the property and the criminal activity, shall not be "grossly disproportional to the gravity of the offense." The statute directs the court to compare the gravity of the offense to the forfeiture and determine if it is grossly disproportionate. *Id.* The remedy for an excessive fine is to reduce the forfeiture as much as necessary to avoid the Eighth Amendment violation. *Id.*

Indeed, the Supreme Court has rejected efforts by the government to forfeit a grossly disproportionate amount of forfeiture in relation to the offense at issue. *See United States v. Bajakajian*, 524 U.S. 321 (1998). In *Bajakajian,* the government attempted to seize $357,144 of funds a defendant was transporting in violation of 31 U.S.C. § 5316(a)(1)(A) (required reporting of over $10,000), pursuant to 18 U.S.C. § 982(a)(1). The Supreme Court concluded that forfeiting the entire $357,144 would violate the Excessive Fines Clause, noting that the Clause limits the government's power to extract payments, whether in cash or kind, as punishment for some offense. *Id.* The Court held that the "test for excessiveness of a punitive forfeiture involves solely a proportionality determination." *Id.* at 333-334. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* at 333. The Supreme Court instructed district courts to "compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportionate to the gravity of the defendant's offense, it is unconstitutional." *Id.* at 336-337.

Here, too, where the maximum fine for a violation of Section 1957 is $250,000 or twice the value of the transaction, a forfeiture of $2.1 million is clearly excessive and grossly disproportionate. Here, the alleged "criminally derived funds" of $70,000 (Count 24) constitute 3.2 percent of that purchase price. Thus, under the circumstances of this case, the government could never forfeit the entire property, as it would be unconstitutional per *Bajakajian*. At most, the Court can only forfeit substitute assets in the amount of $70,000, the amount of the funds the jury determined were laundered in Count 24.

This conclusion is further supported by the forfeiture statutes themselves: § 982(b)(1) states the forfeitures will be governed by 21 U.S.C. § 853 and under § 853(p)(1)(E), substitute property is to be

MICHAEL KAIL'S OPPOSITION TO GOVERNMENT'S APPLICATION FOR PRELIM. ORDER FORFEITURE

forfeited where the forfeitable property has been "commingled with other property which cannot be divided without difficulty." Thus, this is a case in which, at most, Mr. Kail, as to his share, would have to forfeit $70,000 in substitute assets and not the entire property from which that fraction cannot be divided. In other words, because the $70,000 was used as part of the payment for the property, those proceeds, now converted to real estate, could be forfeited to the government in the form of cash (i.e. substitute assets) in the total of $70,000.

### E. An Innocent Spouse's Community Property Interest Cannot Be Forfeited

If this Court determines that substitute property may be forfeited pursuant to 21 U.S.C. § 853(p) in the amount of $70,000, Mr. Kail's innocent spouse's community property interest in that property would not be subject to forfeiture. *United States v. Lester*, 85 F.3d 1409 (1996) (noting that under California law, each spouse has a vested one-half interest in community property and therefore, spouse's interest in property was not subject to forfeiture).[1] Similarly, should the Court somehow determine that the stock options are subject to forfeiture – Ms. Kail holds a 50% interest in the Sumologic shares, held in a joint account. Thus, for any community property, the government could not forfeit more than 50% of it.

### CONCLUSION

The government's application for a preliminary order of forfeiture is a wish list unsupported by the evidence, by statute, or by its own indictment, and is excessive. The only amount of forfeiture supported by the convictions is the $70,000 that the jury found was laundered funds. The government does not get a windfall or get to change the rules after the fact. The jury never considered the stock options, converted to shares after the alleged offenses, and whose value is speculative.

The government's efforts to seize Mr. Kail's entire home for itself demonstrate the type of overreach that would clearly result in an Eighth Amendment violation.

Dated: September 22, 2021                    Respectfully submitted,

                                             /s/
                                             Julia Jayne
                                             Attorney for MICHAEL KAIL

---

[1] This issue is flagged for the Court and understandably, Ms. Kail may have to file a petition pursuant to 21 U.S.C. § 853(n).

MICHAEL KAIL'S OPPOSITION TO GOVERNMENT'S APPLICATION FOR PRELIM. ORDER FORFEITURE

5