UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MICHAEL KAIL,<br>Defendant. | Case No. 18-cr-00172-BLF-1<br><br>**PRELIMINARY ORDER OF FORFEITURE**<br><br>[Re: ECF No. 265] |

Before the Court is the United States' application for a preliminary order of forfeiture as to Defendant Michael Kail. Kail was convicted of eighteen counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 1346, three counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1346, and seven counts of money laundering in violation of 18 U.S.C. § 1957. Kail was convicted based on charges of engaging in a scheme over several years as a Vice President of Netflix, Inc. ("Netflix") in which he entered into contracts with third-party vendors on behalf of Netflix in exchange for personal kickbacks. *See* Jury Verdict, ECF No. 230; Indictment, ECF No. 1. The United States seeks forfeiture of Kail's family home in Los Gatos, California ("Real Property")[1] based on a jury finding that the property was "involved in" Kail's offense conduct underlying Count 24 of the Indictment and therefore forfeitable. *See* Special Jury Verdict, ECF No. 231. The United States also seeks forfeiture of 50,000 shares in the public company Sumo Logic, Inc. ("Sumo Logic") and 106,000 shares in the private company Netskope, Inc. ("Netskope"), Application, ECF No. 265 at 1, two of the Netflix third-party vendors listed in the Indictment related to the charged conduct for

---

[1] The Real Property is located at 234 Almendra Drive, Los Gatos, 95030, in Santa Clara County, California, bearing Assessor's Parcel Number 510-14-016.

which Kail was convicted, *see* Jury Verdict, ECF No. 230. Kail argues that (1) forfeiture of the stock is foreclosed by the United States' failure to show sufficient nexus with the offenses and compliance with the rules and statutes governing forfeiture and (2) forfeiture of the Real Property would constitute an excessive fine under the Eighth Amendment.

The Court hereby orders forfeiture of a money judgment of $700,000 for the Real Property and directs the United States to pursue forfeiture of the stock in a separate civil forfeiture action.

## I. BACKGROUND

The Court outlined the factual and procedural background of this case at ECF No. 264.

## II. LEGAL STANDARD

Criminal forfeiture is a part of sentencing imposed on a defendant convicted of violating certain drug and racketeering laws. *Libretti v. United States*, 516 U.S. 29, 41 (1995). "Unlike a fine, which the district court retains discretion to reduce or eliminate, the district court has no discretion to reduce or eliminate mandatory criminal forfeiture." *United States v. Newman*, 659 F.3d 1235, 1240 (9th Cir. 2011), *abrogated on other grounds by Honeycutt v. United States*, 137 S.Ct. 1626 (2017); *see also* 28 U.S.C. § 2461(c) ("[T]he court shall order the forfeiture of the property as part of the sentence[.]") "Statutorily-prescribed forfeiture is constitutional when supported by the preponderance of the evidence." *United States v. Shryock*, 342 F.3d 948, 991 (9th Cir. 2003). "The court's determination may be based on evidence already in the record … and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B).

## III. DISCUSSION

### A. Stock Holdings

The United States argues that Kail's shares in Sumo Logic and Netskope are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States argues that it presented evidence during trial that Kail acquired the shares by exercising stock options he received in exchange for "advisory services" for Sumo Logic and Netskope during the course of activity forming the basis for his convictions for Counts One through Three and Twelve of the Indictment. *See* Application, ECF No. 265 at 5. The United States offers three options to

2

accomplish forfeiture of the stock: (1) the Court could order forfeiture of the stock as specific property, (2) the Court could order a forfeiture money judgment as to the value of the stock, and (3) the United States could seek forfeiture of the stock in a separate civil action against Kail. *See* Gov't First Suppl. Brief, ECF No. 276; Gov't Second Suppl. Brief, ECF No. 278. The United States "submits to the Court's discretion with respect to which of the remedies … is most appropriate here." Gov't First Suppl. Brief, ECF No. 276 at 1. Kail argues that since the United States has failed to establish (1) sufficient nexus between the stock and Kail's offenses, *see* Opposition ("Opp'n"), ECF No. 266 at 3-4, or (2) compliance with Rule 32.2 and the statutes governing criminal forfeiture, *see* Kail Suppl. Brief, ECF No. 282 at 1-4, the Court cannot order forfeiture of the stock.

Under 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to … any offense constituting 'specified unlawful activity'" is subject to forfeiture. 18 U.S.C. § 981(a)(1)(C); *see Newman*, 659 F.3d at 1239 (finding 28 U.S.C. § 2461 "permits the government to seek criminal forfeiture whenever civil forfeiture is available and the defendant is found guilty of the offense") (emphasis omitted). "Specified unlawful activity" includes mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. 18 U.S.C. § 1956(c)(7); 18 U.S.C. § 1961(1).

### i. Specific Property

The United States first proposes that the Court order forfeiture of the Netskope shares as specific property.[2] *See* Gov't First Suppl. Brief, ECF No. 276 at 1-2. The United States argues that

---

[2] The United States concedes that it cannot recover the Sumo Logic shares as specific property because it seized the Sumo Logic stock certificates during the execution of a search warrant in 2015 and did not present the issue of the forfeitability of the shares to the jury. *See* Gov't Second Suppl. Brief, ECF No. 278 at 1. At the October 19, 2021 hearing, the United States indicated that it had also obtained a PDF of the Netskope stock certificates before filing the Indictment. But the United States has since informed the Court that it was mistaken at the hearing, and that the stock certificate PDFs it had obtained were for Kail's stock in a different company—not Netskope. *See* Gov't First Suppl. Brief, ECF No. 276 at 1-2.

the Court has the authority to order forfeiture of the Netskope shares because (1) it did not list these shares in the Indictment, so no jury trial on those assets was required and (2) it discovered the shares during trial. *See id.*; Gov't Second Suppl. Brief, ECF No. 278 at 1; Reply, ECF No. 267 at 3-4. Kail argues that the United States cannot seek forfeiture of the Netskope shares as specific property because (1) the United States was required to have the jury decide on the forfeitability of all specific property for which it was seeking forfeiture and (2) the timing of the United States' discovery that Kail still had the Netskope shares did not relieve it of the jury determination requirement. *See* Kail Suppl. Brief, ECF No. 282 at 1-2; Opp'n, ECF No. 266 at 2.

The Court agrees with Kail. Rule 32.2(b)(5)(B) provides: "If a party timely requests to have the jury determine forfeiture, the government must submit a proposed Special Verdict Form listing *each property* subject to forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant." Fed. R. Crim. P. 32.2(b)(5)(B) (emphasis added). The United States does not dispute that a jury determination regarding forfeiture was timely requested in this case. The jury was presented with a Special Verdict Form regarding Kail's Real Property but not the Netskope shares. *See* Special Jury Verdict, ECF No. 231. Accordingly, the United States cannot seek forfeiture of the Netskope shares as specific property at this stage.

Kail's jury trial right did not depend on whether the Netskope shares were listed in the Indictment. Rule 32.2(a) indicates that the Indictment "need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks." Fed. R. Crim. P. 32.2(a); *see also United States v. Lazarenko*, 504 F.Supp.2d 791, 796 (N.D. Cal. 2007) ("Rule 32.2(a) only requires that the United States give the defendant general notice that it will be seeking forfeiture in accordance with the applicable statute."). But if a jury determination as to forfeiture is requested, then a Special Verdict Form listing "each property subject to forfeiture" must be submitted to the jury, regardless of what was listed in the Indictment. Fed. R. Crim. P. 32.2(b)(5)(B). The Court agrees with Kail that if a defendant only had a jury trial right as to forfeiture of specific property listed in the Indictment, the United States would have the authority to determine the scope of a defendant's jury trial right by strategically omitting specific property from

4

the Indictment. *See* Kail Suppl. Brief, ECF No. 282 at 1-2. Rule 32.2 does not support this outcome.

The United States further argues that it discovered that Kail possessed the Netskope shares during trial, so there was no jury trial right as to these shares. Reply, ECF No. 267 at 3. The United States points to Rule 32.2(e) in support of the proposition that "property identified and/or located after conviction that is still subject to the order of forfeiture is, in fact, forfeitable," and no jury trial right applies. *See id.* at 3-4. The United States is correct that "[t]here is no right to a jury trial under Rule 32.2(e)," Fed. R. Crim. P. 32.2(e)(3), and the rule does discuss "subsequently located property," Fed. R. Crim. P. 32.2(e). But Rule 32.2(e) refers only to "substitute property that qualifies for forfeiture under an applicable statute" and "property that … is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered." Fed. R. Crim. P. 32.2(e)(1)(A-B). The United States is not seeking "substitute property" for the Netskope shares, and there is no "existing order of forfeiture" at issue here—let alone property "identified after that order was entered." *Id*. At the October 19, 2021 hearing, the Court requested supplemental briefing from the parties on whether courts have applied Rule 32.2(e) to specific property discovered during trial, but before an order of forfeiture is entered. In the United States' supplemental briefing, it concedes that there "appears to be an utter dearth of caselaw on this subject," Gov't First Suppl. Brief, ECF No. 276 at 1, and that "this particular situation is not specifically covered by Rule 32.2," Gov't Second Suppl. Brief, ECF No. 278 at 1. Absent any case authority supporting the United States' interpretation of Rule 32.2, the Court will not extend the reach of Rule 32.2(e) to cover property discovered before a forfeiture order is granted. The plain reading of Rule 32.2(e) forecloses the United States' argument.

The United States also argues that as a policy matter, if specific property discovered during trial to be the proceeds of criminal activity or substitute assets is not forfeitable, then defendants would only need to hide the fact that they profited from criminal activity long enough to plead guilty or finish trial, and then they could enjoy the fruits of their crimes openly and notoriously. *See* Reply, ECF No. 267 at 3. Without caselaw or applicable statutory language to point to, the United States is asking the Court to read into the forfeiture statutes an exception to a defendant's jury trial right as to the forfeitability of specific property when that property is discovered during trial. But even

5

if such an exception were proper, the United States fails to demonstrate that it should apply here. Kail correctly points out that the United States plainly considered the Netskope stock "proceeds" of Kail's offenses from the start of trial at the latest, since it presented evidence about the stock in its case-in-chief. *See* Kail Suppl. Brief, ECF No. 282 at 2 (citing Trial Ex. 457, 461, 472, 479). Kail argues that the United States' uncertainty as to whether Kail still possessed the Netskope stock did not excuse it from presenting the question of the forfeitability of the stock to the jury. *See id.* The Court agrees with Kail—the United States has not shown that it discovered that the Netskope stock were proceeds of Kail's offenses at trial. At most, the United States discovered during trial that Kail still possessed the Netskope stock. The Court considers this insufficient to show that Kail lacked the right to a jury trial as to the forfeitability of the Netskope stock.

Accordingly, the Court declines to accept the United States' proposal to enter an order of forfeiture as to the specific property of the Netskope shares.

### ii. Money Judgment

The United States' second proposal is that the Court impose a forfeiture money judgment for the value of the Sumo Logic and Netskope shares. *See* Gov't First Suppl. Brief, ECF No. 276 at 2-3; Gov't Second Suppl. Brief, ECF No. 278 at 1-2. The United States proposes a forfeiture money judgment of $3,000,000, based on the alleged value of the Sumo Logic stock and the alleged valuation of Netskope multiplied by Kail's percentage ownership of the company. *See* Gov't First Suppl. Brief, ECF No. 276 at 3. The United States argues that a money judgment would be proper because (1) the United States provided notice that it would seek a money judgment in the Indictment and (2) a forfeiture money judgment is not subject to any of the requirements of specific property, "subsequently discovered" property, or "substitute property" under Rule 32.2 or 21 U.S.C. § 853, since a money judgment is a separate form of forfeiture. S*ee* Gov't Second Suppl. Brief, ECF No. 278 at 1-2. Kail argues that a money judgment for the value of specific property is only appropriate where (1) a jury has determined the specific property is forfeitable and (2) the specific property has been dissipated by the time of sentencing due to the defendant's act or omission. Kail Suppl. Brief, ECF No. 282 at 2-4. Kail argues that the United States cannot point to a case where a court ordered a forfeiture money judgment for the value of specific property in a defendant's

possession, rather than for money that the defendant obtained. *Id.* at 3.

The parties disagree on whether the Court can order a forfeiture money judgment for the value of specific property in a defendant's possession without a jury determination that the property is forfeitable. The United States argues that a money judgment is "separate from an order seeking specific … property," so a jury trial right does not apply. Gov't Second Suppl. Brief, ECF No. 278 at 2. Kail argues that since the money judgment the United States seeks is for the value of specific property, his jury right under Rule 32.2(b)(5) is implicated. Kail Suppl. Brief, ECF No. 282 at 2-3. The Court agrees with Kail that a defendant's right to a jury trial under Rule 32.2(b)(5) cannot be avoided by seeking a money judgment in lieu of specific property still in defendant's possession. The Court finds the Eighth Circuit's reasoning persuasive in *United States v. Gregoire*, where the court found that the government could not seek a money judgment for the value of specific property still in a defendant's possession "to avoid submitting forfeiture issues to the jury," because in so doing the government "abandoned this claim of forfeiture in the indictment." 638 F.3d 962, 972 (8th Cir. 2011). If a jury determination were not required, then the United States could simply evade a defendant's jury trial right under Rule 32.2(b)(5) as to the forfeitability of specific property by seeking a money judgment for the value of the specific property. The Supreme Court has warned against reading such an "end run" into the forfeiture statutes that would allow the United States to "circumvent Congress' carefully constructed statutory scheme[.]" *Honeycutt*, 137 S.Ct. at 1634. The United States cannot seek a forfeiture money judgment for the value of the Sumo Logic and Netskope shares to avoid Kail's jury trial right as to their forfeitability.

Moreover, the United States fails to point to a single case where a court entered a forfeiture money judgment for the value of specific property in a defendant's possession on which the jury did not make a determination as to forfeitability. The United States can only point to cases where a court ordered a forfeiture money judgment for money that a defendant had obtained as proceeds of an offense. *See United States v. Nejad*, 933 F.3d 1162, 1164 (9th Cir. 2019) ("The proceeds of Nejad's offenses consisted of the $154,694.50 in fraudulently obtained government funds he received."); *Newman*, 659 F.3d at 1244-45 (money judgment for value of stolen money); *United States v. Lo*, 839 F.3d 777, 781-82 (9th Cir. 2016) (money judgment for funds transferred from

employer's bank accounts to personal accounts); *United States v. Phillips*, 704 F.3d 754, 760-61 (9th Cir. 2012) (money judgment for value of wire transfers of stolen company money). The Court finds that these prior forfeiture orders—money judgments for the value of tainted money—are different from the United States' proposal—a money judgment for the value of tainted specific property. Rule 32.2(b)(5) only speaks to "specific property"—Rule 32.2 is silent about a jury trial right as to other property, including a defendant's ill-gotten funds. *See, e.g., Phillips*, 704 F.3d at 769 ("[T]here is no constitutional 'right to a jury verdict on forfeitability' in a criminal forfeiture proceeding.") (quoting *Libretti v. United States*, 516 U.S. 29, 49 (1995).)

Accordingly, the Court finds that it cannot order a forfeiture money judgment as to the value of the Sumo Logic or Netskope shares.

### iii. Separate Civil Action

The United States' third proposal is that if the Court declines to order forfeiture of the Netskope shares or a money judgment for the value of the Sumo Logic or Netskope shares, then it can seek forfeiture of the shares in a separate civil action. *See* Gov't First Suppl. Brief, ECF No. 276 at 3. Since the United States submitted three forfeiture options "to the Court's discretion," and since the Court finds that the first and second options are unavailable, the Court finds that the United States should pursue relief through a separate civil action. *Id.* at 1.

### B. Real Property

The United States argues that the entire Real Property is subject to forfeiture under 18 U.S.C. § 982(a)(1) and Rule 32.2(b)(5). *See* Application, ECF No. 265 at 5. The United States points to the special verdict returned by the jury at ECF No. 231, which found that the Real Property is property "involved in" the money laundering violation set forth in Count Twenty-Four of the Indictment and forfeitable under 18 U.S.C. § 982. *See* Special Jury Verdict, ECF No. 231. Kail argues that forfeiture of the Real Property would be an excessive fine under the Eighth Amendment, because the purchase price of the Real Property was $2.1 million and (1) the jury determined he only used $70,000, or 3.2 percent of the purchase price, in criminally derived funds toward the down payment on the Real Property and (2) the maximum fine for the Count Twenty-Four violation is only $250,000 or twice the value of the transaction. *See* Opp'n, ECF No. 266 at 3-4. Accordingly,

1  Kail argues that under 21 U.S.C. § 853(p) the Court should enter an order of forfeiture for $70,000
2  in substitute property. *See id.*

3    The United States responds that the jury found the Real Property was forfeitable in its
4  entirety—not just as to the $70,000 in criminally derived funds used for the down payment. *See*
5  Reply, ECF No. 267 at 5-6. Further, based on the factors set forth in *Beecroft*, the United States
6  argues that an order of forfeiture for the entirety of the Real Property would not be an excessive
7  fine. *See id.* (citing *United States v. Beecroft*, 825 F.3d 991, 1000 (9th Cir. 2016), *abrogated on*
8  *other grounds by Honeycutt*, 137 S.Ct. at 1632, 1635.) The United States argues that the *Beecroft*
9  analysis should consider Kail's criminal conduct in its entirety—not just conduct charged in Count
10 24—and Kail's criminal conduct was extensive. *See id.* at 5-8. The United States further argues
11 that the forfeiture of the Real Property at its current $3.3 million value is not excessive in light of
12 (1) the maximum fine of approximately $7 million for all counts under which Kail was charged, (2)
13 the maximum Guideline fine, and (3) the loss and gain amounts at issue. *See id.* at 7-8. Finally, the
14 United States argues that to the extent the Court decides to impose a money judgment for part of the
15 value of the Real Property, a $700,000 money judgment would be appropriate. *See id.* at 9.

16   Under 18 U.S.C. § 982(a)(1), in imposing a sentence for a defendant convicted of money
17 laundering under 18 U.S.C. § 1956, a court "shall order that the person forfeit to the United States
18 any property, real or personal, involved in such offense, or any property traceable to such property."
19 18 U.S.C. § 982(a)(1). Forfeiture violates the Excessive Fines Clause if it is grossly disproportional
20 to the gravity of a defendant's offense. *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).
21 While courts are not restricted to "any rigid set of factors" in the excessive fines analysis for
22 forfeiture, *United States v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003), they generally consider
23 four factors: "(1) the nature and extent of the crime, (2) whether the violation was related to other
24 illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of
25 the harm caused." *Beecroft*, 825 F.3d at 1000 (quoting *United States v. $100,348.00 in*
26 *U.S. Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004).) Where forfeitable property "has been
27 commingled with other property which cannot be divided without difficulty" as a result of "any act
28 or omission of the defendant," a court must order "forfeiture of any other property of the defendant,

up to the value" of the forfeitable property. 21 U.S.C. § 853(p). Under Rule 32.2(b)(1)(A), "[i]f the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A).

The jury found that the Real Property was "involved in the money laundering conviction in Count 24 of the Indictment, a violation of 18 U.S.C. § 1957, or is traceable to such property," and that there is a "nexus between the property and Count 24," such that the Real Property "is forfeitable under 18 U.S.C. § 982." *See* Special Jury Verdict, ECF No. 231. The jury made these findings as to the *entire* Real Property, so as a threshold matter the Court finds that Kail is mistaken that forfeiture is appropriate only up to the value of the $70,000 in criminally derived funds the jury found Kail used for the down payment of the real property. *See id.* "[W]hen legitimate funds are commingled with property involved in money laundering or purchased with criminally derived proceeds, the entire property, including the legitimate funds, is subject to forfeiture." *United States v. Kivanc*, 714 F.3d 782, 794-95 (4th Cir. 2013). The parties agree that a money judgment would be appropriate in lieu of forfeiting the Real Property itself—they only disagree on the proper amount. Accordingly, the only remaining questions are (1) whether an order of forfeiture for the Real Property would violate the Excessive Fines Clause of the Eighth Amendment and (2) if so, what value of a forfeiture money judgment is appropriate for the Real Property.

As an additional threshold matter, the parties disagree as to whether the excessive fines analysis should consider Kail's offense conduct underlying Count 24 in isolation, or whether it should be considered in light of the offense conduct underlying all of his counts of conviction. Under the factors outlined by *Beecroft*, courts consider "whether the violation was related to other illegal activities." *Beecroft*, 825 F.3d at 1000. Further, courts have found that in cases involving mail fraud or wire fraud offenses like the present one, because "the commission of such a mail fraud or wire fraud offense necessarily includes a fraudulent scheme as a whole, the proceeds of the crime of conviction consist of the funds involved in that fraudulent scheme, including additional executions of the scheme that were not specifically charged or on which the defendant was acquitted[.]" *Lo*, 839 F.3d at 793. Accordingly, the Court finds that Kail's offense should be considered in the context of all his crimes for the excessive fines analysis.

Under the first *Beecroft* factor—the nature and extent of the crime—the Court finds that Kail's money laundering offense in violation of 18 U.S.C. § 1957 that served as the basis for his conviction under Count 24 supports a substantial penalty. The conduct underlying Kail's conviction for Count 24 was the wire transfer of $70,000 of Kail's ill-gotten gains to a title company as part of the down payment on Kail's home. *See, e.g.,* Trial Ex. 877, 964, 975; *see also* Indictment, ECF No. 1 ¶ 32. In *Bajakajian*, the Ninth Circuit observed that the defendant "does not fit into the class of persons for whom [18 U.S.C. § 982(a)(1)] was principally designed:  He is not a money launderer, a drug trafficker, or a tax evader." *Bajakajian*, 524 U.S. at 338. Here, Kail falls squarely in the class of persons for whom 18 U.S.C. § 982(a)(1) was "principally designed":  "The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1).

Under the second *Beecroft* factor—whether the violation was related to other illegal activities—the Court finds that the jury verdict and the evidence presented at trial support that Kail's money laundering conduct was directly related to his other criminal conduct. Kail was convicted of eighteen counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 1346, three counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1346, and seven counts of money laundering in violation of 18 U.S.C. § 1957—a total of twenty-eight counts of conviction. *See* Jury Verdict, ECF No. 230. Kail was convicted based on charges that he engaged in a multiyear scheme to defraud Netflix by using his position as a Vice President at the company to approve contracts with nine third-party vendor companies on behalf of Netflix in exchange for personal kickbacks. *See, e.g.*, Indictment, ECF No. 1 ¶¶ 17, 22, 23. The United States presented evidence at trial of the deceptive conduct Kail engaged in to maintain the scheme, including lying to Netflix CEO Reed Hastings about his relationships with third-party vendors. *See, e.g.,* Trial Ex. 13; Trial Tr., Vol. 3, 635:3-23, 637:14-21. Further, the United States presented evidence of both implicit and explicit quid pro quo. *See, e.g.,* Trial Ex. 309, 330, 333; Trial Tr. Vol. 4, 781:2-21 (evidence of implicit "pay-to-play" in Platfora relationship); Trial Ex. 651, 652 (evidence of implicit quid pro quo in ElasticBox relationship); Trial Tr. Vol. 5, 1193:12-22, 1194:9-11, 1195:13-15, 1198:2-3, 1199:2-4; Tr. Ex. 680 (evidence of

explicit quid pro quo). The United States further presented evidence at trial that the money laundering that served as the basis for Count 24 involved transferring the proceeds of his scheme conduct to a title company as part of the down payment on the Real Property. *See, e.g,* Trial Ex. 705, 964, 971; Trial Tr., Vol. 9, 1968:16-1969:16, 1999:18-2000:14, 2012:14-2013:17. The Court finds that the direct relationship between the money laundering charge and Kail's scheme conduct supports the proportionality of the forfeiture of the Real Property. *See United States v. Haleamau*, 887 F.Supp.2d 1051, 1066 (D. Haw. Aug. 1, 2012) (forfeiture not excessive where charged conduct was "intimately associated with illegal conduct"); *see also United States v. Ahmad*, 213 F.3d 805, 818 (4th Cir. 2000) (fine not excessive where violations were related to "sophisticated criminal activity which occurred over a number of years").

Under the third *Beecroft* factor—the other penalties that may be imposed for the violation—"'[i]n considering an offense's gravity, the other penalties that the Legislature has authorized are certainly relevant evidence,' … as are the maximum penalties that could have been imposed under the Sentencing Guidelines[.]" *United States v. 3814 NW Thurman St.*, 164 F.3d 1191, 1197 (9th Cir. 1999) (quoting *Bajakajian*, 524 U.S. at 339 n.14), *opinion amended on denial of reh'g sub nom.*, 172 F.3d 689 (9th Cir. 1999), *superseded by statute on other grounds*, 18 U.S.C. § 983(d) (2000). "[T]he maximum penalties under the Sentencing Guidelines should be given greater weight than the statutory maximum because the Guidelines take into account the specific culpability of the offender." *$100,348.00*, 354 F.3d at 1122.

The penalties that may be imposed for Kail's crimes further underline their gravity. The penalties for Count 24 alone include a maximum sentence of 10 years in prison and a maximum fine of $250,000. Revised Presentence Investigation Report ("PSR"), ECF No. 283 at 2. For each of Counts 1-4 and 6-22—the counts of conviction under 18 U.S.C. §§ 1343 and 1346 and 18 U.S.C. §§ 1341 and 1346—Kail could be sentenced up to 20 years in prison with a maximum fine of $250,000. *Id*. Accordingly, Kail could be ordered to pay fines of up to $7,000,000 for his 28 counts of conviction. Further, while the recommendations of the Sentencing Guidelines are dependent on the fraud loss amount that the Court has yet to determine, the Court finds that the Guidelines further underline the gravity of Kail's offenses. The United States offers evidence of

fraud loss amounting to $2,020,068.80 based on contracts with five third-party vendors. *See* United States' Opposition to Defendant's Motion for Judgment of Acquittal and Motion for New Trial, ECF No. 251 at 5-7; Government's Sentencing Memorandum, ECF No. 270 at 3. A Guideline sentence would be 63-78 months in prison. If the fraud loss is determined to be even a third—$673,356.27—of what the United States is asserting, then the adjusted offense level, including all relevant enhancement, would be 24. The Sentencing Guidelines would provide a range of imprisonment from 51 to 63 months and a range of fines from $20,000 to $200,000. USSG §2B1.1(b). The severe penalties that could be imposed outside of forfeiture—both statutorily and under the Sentencing Guidelines—indicate that Mr. Kail's offenses "lean[] more toward the high end of the gravity spectrum." *$132,245.00*, 764 F.3d at 1061 (9th Cir. 2014). Accordingly, the third *Beecroft* factor further support the proportionality of the forfeiture of the Real Property.

Under the fourth *Beecroft* factor—the extent of the harm caused—the United States argues that the value of fraud loss is $2,020,068.80. *See* Government Sentencing Memorandum, ECF No. 270 at 5. Kail argues that there is no fraud loss. *See* Kail Sentencing Memorandum, ECF No. 269 at 10. As discussed, above, the United States offers evidence of fraud loss based on contracts with five third-party vendors. *See* United States' Opposition to Defendant's Motion for Judgment of Acquittal and Motion for New Trial, ECF No. 251 at 5-7; Government's Sentencing Memorandum, ECF No. 270 at 3. While the Court has yet to determine the amount of fraud loss, if it finds that the amount of fraud loss is even a third of the amount that the United States is asserting, the amount of economic harm at issue will be $673,356.27. Further, the United States presented evidence during trial that Kail's conduct underlying the Count 24 money laundering charge involved funds transferred from two of the third-party vendors connected to the fraud loss the United States is asserting—Netenrich, Inc. and VistaraIT, LLC. *See, e.g,* Trial Tr., Vol. 9, 1968:16-1969:16, 2012:14-2013:17. Accordingly, while the Court does not give the fourth *Beecroft* factor much weight given the unresolved loss issue, the Court finds that it weighs somewhat in support of the proportionality of the forfeiture of the Real Property. *See U.S. Secs. & Exch. Comm'n v. Brookstreet Secs. Corp.*, 664 Fed.Appx. 654, 657 (9th Cir. 2016) (finding fine was not excessive where "[a] conservative assessment of evidence…indicates that losses sustained by six of the forty-nine victims

13

equals at least $2 million") (emphasis omitted); *see also United States v. Wommer*, No. 2:10-cr-00596-GMN-GWF, 2011 WL 5117874, at *10 (D. Nev. Oct. 27, 2011) ("This is not a case like *Bajakajian* that, on its face, involved no financial harm to the government or third persons.").[3]

Based on the *Beecroft* factors, Kail's crimes were serious offenses, and a substantial forfeiture money judgment would not be "grossly disproportional to the gravity" of Mr. Kail's offenses. *Bajakajian*, 524 U.S. at 334. The United States argues that given the gravity of Kail's offenses, the Court should order forfeiture of the Real Property as specific property. The Court is reluctant to do so. The Court recognizes that the $3.3 million value of the Real Property is significantly less than the maximum fine for all counts under which Kail was convicted. Further, at the October 19, 2021 hearing, the United States explained that if the house is forfeited, the United States will seize it subject to a $1.7 million mortgage. So the value of the house as specific property is only approximately $1.6 million. However, the Court understands that the Real Property is Kail's home, where he lives with his wife and two children. In light of the value of the Real Property and the fact that its forfeiture would uproot Kail's family, the Court finds that forfeiture of the Real Property as specific property would constitute an excessive fine under the Eighth Amendment. *See United States v. Real Prop. Located in El Dorado Cty. at 6380 Little Canyon Rd., El Dorado, Cal.*, 59 F.3d 974, 985 (9th Cir. 1995) (excessive fines analysis should consider "the intangible, subjective value of the property, e.g., whether it is the family home").

As an alternative, the United States proposes that the Court order a forfeiture money judgment of $700,000. *See* Reply, ECF No. 267 at 9. Under Rule 32.2(b)(1)(A), if the United States seeks a personal money judgment, then "the court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A). The Court finds the United States' alternative proposal for a forfeiture money judgment of $700,000 is reasonable in light of the $7,000,000 maximum fine for all counts of conviction combined. Further, a $700,000 money judgment is 3.5 times the value of the potential $200,000 maximum Guideline fine. In *United States*

---

[3] In the event that the Court determines that the fraud loss is less than $550,000, Defendant may request reconsideration of this factor.

*v. Mackby*, the Ninth Circuit found that a judgment in an amount approximately ten times the maximum Guideline fine was not an excessive fine. *Mackby*, 339 F.3d at 1018-19; *United States v. Riedl*, 82 Fed.Appx. 538, 540 (2003) (finding forfeiture of property involved in money laundering was not an excessive fine where the value of the property was 12 to 13 times the maximum Guideline fine); *$132,245.00*, 764 F.3d at 1060 (forfeiture money judgment 2.6 times the value of maximum Guideline fine was not excessive). A $700,000 money judgment is reasonable even if the Court were to consider the offenses underlying Kail's conviction under Count 24 in isolation, as Kail argues the Court should. Opp'n, ECF No. 266 at 4-5. A $700,000 money judgment is only 2.8 times the $250,000 maximum fine for Count 24 alone. PSR at 2. Additionally, $700,000 is only ten times the value of the $70,000 Kail was convicted of laundering by using it toward the down payment of the Real Property—less if appreciation of the Real Property from $2.1 million to $3.3 million is taken into consideration. *See, e.g., United States v. Afriyie*, 929 F.3d 63, 73 (2d Cir. 2019). As outlined above, the Ninth Circuit has considered penalties that are ten times of a maximum Guideline fine or larger to be within the bounds of the Eighth Amendment. *Mackby*, 339 F.3d at 1017; *Riedl*, 82 Fed.Appx. at 540. The Court finds that a $700,000 forfeiture money judgment in lieu of forfeiting the house itself does not constitute an excessive fine under the Eighth Amendment.[4]

Accordingly, the Court orders a forfeiture money judgment of $700,000 as to the Real Property.

### C. Community Property Interest

Kail further argues that given his innocent spouse's community property interest in (1) the Real Property and (2) the Sumo Logic shares, 50% of that property is not subject to forfeiture. *See* Opp'n, ECF No. 266 at 5. However, Kail appears to concede that pursuant to 21 U.S.C. § 853(n),

---

[4] The Court notes that its excessive fines analysis pertains only to the question of whether forfeiture of the Real Property would constitute an excessive fine. The Court anticipates further forfeiture demands will be made in a separate civil suit related to the Netskope and Sumo Logic stock. Nothing in this excessive fines analysis should be construed to place an upper limit on the appropriateness of additional forfeiture under the Eighth Amendment.

15

1 Ms. Kail's and any other third-party's claims to the property can only be addressed at an ancillary proceeding following the entry of an order of forfeiture. *See id.* at 5 n.1. The United States agrees. *See* Reply, ECF No. 267 at 9-10. Thus, Ms. Kail's alleged community property interest in the property is not at issue at this stage. *See* Fed. R. Crim. P. 32.2(b)(2)(A) ("The court must enter the [preliminary forfeiture] order without regard to any third party's interest in the property."); 21 U.S.C. § 853(n).

## IV.	ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) the Court ORDERS forfeiture of a $700,000 money judgment as to Defendant Michael Kail;

(2) the Court DENIES the United States' application to forfeit the Sumo Logic shares, the Netskope shares, or the Real Property as specific property and defers further consideration to a civil forfeiture action, if the United States elects to proceed in that manner.

Dated: November 17, 2021

_____
BETH LABSON FREEMAN
United States District Judge